*200 OPINION OF THE COURT
Titone, J.
 The clash between the goals of environmental preservation and commercial development of the Pine Bush area of the City of Albany has given rise to this dispute. Plaintiffs-petitioners allege that violations of the State Environmental Quality Review Act (SEQRA) should render the City’s enactment of three ordinances which open the Pine Bush to commercial development invalid and that the first of the ordinances is vague and constitutes an overbroad delegation of authority. First, we hold that a proceeding alleging SEQRA violations in the enactment of legislation must be commenced within four months of the date of enactment of the ordinance. Thus, the SEQRA challenges to the first two ordinances are untimely. In addition, the cause of action alleging vagueness and an overbroad delegation of authority in the first ordinance, although timely, is not meritorious. We also hold, however, that when an action with potential adverse effects on the environment is part of an integrated project designed to balance conflicting environmental goals within a subsection of a municipality that is ecologically unique, the potential cumulative impact of other proposed or pending projects must be considered pursuant to SEQRA before the action may be approved. Without this consideration, approval of the third ordinance enacted by the City was arbitrary and capricious and must be declared null and void.
I.
The Pine Bush, partially within the City of Albany, contains the only remaining large pine barrens on inland sand dunes in the United States. Its unusual inland sand dune composition is the home of rare plant and animal species such as the endangered Karner Blue Butterfly (ECL 11-0535) which survives on the blue lupine, a plant indigenous only to the pine barren. The record establishes that the Pine Bush has a number of distinct environmental characteristics worthy of protecting.
Recognizing this need for preservation but also desiring to expand commercial development into the area, on March 5, *201 1984, the City of Albany Common Council approved the first ordinance challenged in this proceeding, which was "intended to define commercial development of the area of the City known as the Pine Bush by insuring that its ecological integrity is maintained” (ordinance Number 7.11.84 § 1). The ordinance amended the zoning provisions of the City by providing for a new C-PB Commercial-Pine Bush classification allowing "[s]ingle-story office buildings or otherwise conforming to the land contour as determined and approved by the appropriate Site Plan Review Agency” (ordinance Number 7.11.84 § 3). No particular land was set aside for possible development under the ordinance. The second challenged ordinance, approved on July 2, 1984, created the Pine Bush Site Plan Review District encompassing approximately 550 acres of undeveloped Pine Bush land and delineated a site plan review process with specific criteria to be used by the Site Plan Review Agency in passing upon applications for certain uses within the district. The final challenge is to Common Council’s approval of defendant-respondent Anderson’s application to change the zoning classification of 29.9 acres of undeveloped land within the Pine Bush to C-PB Commercial-Pine Bush enabling Anderson to construct a five-building, two-story office complex. The City approved the change following consideration of a final environmental impact statement and a determination that any adverse environmental effects had been minimized to the maximum extent practicable (6 NYCRR 617.9 [c]).
Plaintiffs-petitioners, a not-for-profit corporation whose purpose is to "promote the preservation of Albany’s unique and beautiful pine barrens”, several of the corporation’s officers, local homeowners’ associations and individual homeowners and taxpayers, commenced this combined declaratory judgment action and article 78 proceeding on March 5, 1985 alleging that various SEQRA violations in the enactment of the challenged ordinances rendered them illegal, that the zone change for Anderson’s property constituted spot zoning, and that the creation of C-PB Commercial-Pine Bush zone involved an improper delegation of authority to the Site Plan Review Board. Special Term granted all the relief requested and declared the ordinances null and void. With respect to the Anderson property in particular, the court held that Common Council’s failure to consider the cumulative impact of other pending developments in the Pine Bush when it reviewed Anderson’s Environmental Impact Statement (EIS) violated the provisions of SEQRA. Upon reargument, the court ad *202 hered to its original decision and declined to dismiss the first two causes of action on the ground that they were barred by the four-month Statute of Limitations (CPLR 217). Special Term concluded that the ordinances challenged were purely legislative acts and that the applicable Statute of Limitations was six years (CPLR 213 [1]).
The Appellate Division modified. The Third Department agreed that the City’s failure to address the cumulative environmental impact of pending projects in the Pine Bush was fatal to Anderson’s application. However, the court held that the applicable statutory period for challenging SEQRA violations was four months and, thus, held that the second cause of action concerning the creation of the Pine Bush Site Plan Review District was time-barred. The court held that the first cause of action challenging the C-PB Commercial-Pine Bush classification was timely because it had not been ripe for review until the classification was applied to a particular piece of land. Nonetheless, the court declined to reach the substantive challenge as unnecessary.
II.
In order to determine the Statute of Limitations applicable to a particular declaratory judgment action, the court must "examine the substance of that action to identify the relationship out of which the claim arises and the relief sought” (Solnick v Whalen, 49 NY2d 224, 229). If the court determines that the underlying dispute can be or could have been resolved through a form of action or proceeding for which a specific limitation period is statutorily provided, that limitation period governs the declaratory judgment action (Press v County of Monroe, 50 NY2d 695; Solnick v Whalen, supra, at 230; see, Koerner v State of New York, 62 NY2d 442, 446-447). Here, the question is whether the four-month Statute of Limitations period applicable to article 78 proceedings should be invoked.
The general rule is that an article 78 proceeding is unavailable to challenge the validity of a legislative act such as a zoning ordinance (Matter of Voelckers v Guelli, 58 NY2d 170, 176; Matter of Merced v Fisher, 38 NY2d 557, 559; Peekskill Suburbs v Morabito, 74 AD2d 843, affd 51 NY2d 941). However, when the challenge is directed not at the substance of the ordinance but at the procedures followed in its enactment, it is maintainable in an article 78 proceeding (Matter of Voelckers v Guelli, supra, at 177).
*203 With the exception of the challenge to the first ordinance based upon vagueness and an overbroad delegation of authority, regardless of the form in which plaintiffs-petitioners have chosen to couch their action, their challenges to the three ordinances primarily involve the City’s failure to follow SEQRA. As such, those causes of action were maintainable in an article 78 proceeding and should have been commenced within four months (CPLR 217; Matter of Connell v Town Bd., 67 NY2d 896; Lai Chun Chan Jin v Board of Estimate, 101 AD2d 97, appeal dismissed 63 NY2d 675; Weinberg, Practice Commentary, McKinney’s Cons Laws of NY, Book 17 Vi, ECL C8-1019:6, at 79; see, Matter of Tri-County Taxpayers Assn. v Town Bd., 55 NY2d 41; Matter of Niagara Recycling v Town Bd., 83 AD2d 335 [Hancock, Jr., J.], affd 56 NY2d 859; Matter of Brew v Hess, 124 AD2d 962). Accordingly, we agree with the Appellate Division that the second cause of action challenging the creation of the Pine Bush Site Plan Review District was untimely.
By the same reasoning, contrary to the view of the Appellate Division, the action attacking the alleged SEQRA violations in the classification of C-PB Commercial-Pine Bush was not commenced in a timely manner. Common Council’s creation of this classification, with its concurrent announcement of a policy to commercially develop the Pine Bush in an ecologically sound manner, constituted an "action” within the meaning of SEQRA, in that it committed the City to future commercial development of the Pine Bush (6 NYCRR 617.2 [b] [2]). SEQRA review was required before any specific applications were needlessly studied at great expense to both the City and the developers (6 NYCRR 617.1 [c]; cf., Matter of Programming & Sys. v New York State Urban Dev. Corp., 61 NY2d 738). Inasmuch as consideration of possible detrimental effects of this action should have been given at the earliest possible time (ECL 8-0109 [4]; 6 NYCRR 617.1 [c]), the time to complain of SEQRA violations in the enactment of this ordinance was within four months of the date of the enactment.
III.
Plaintiffs/petitioners also raised a constitutional question based upon the claimed vagueness of the ordinance which created the classification C-PB Commercial-Pine Bush and its alleged overbroad delegation of authority to the Site Plan *204 Review Agency.[1] As this challenge could not be maintained in an article 78 proceeding (see, Press v County of Monroe, 50 NY2d 695, 702, supra), the four-month limitation period is inapplicable to this claim. On the merits, however, we hold that the ordinance is not vague and does not constitute an overbroad delegation of authority.
The ordinance creating the classification of C-PB Commercial-Pine Bush defined the principal commercial use allowed as "[s]ingle-story office buildings or otherwise conforming to the land contour as determined and approved by the appropriate Site Plan Review Agency.” Plaintiffs/petitioners contend that this language improperly conferred legislative power on the Site Plan Review Agency. However, "there is no constitutional prohibition against the delegation of power, with reasonable safeguards and standards” (Matter of Levine v Whalen, 39 NY2d 510, 515; Matter of City of Utica v Water Pollution Control Bd., 5 NY2d 164, 169). This ordinance merely added a classification to the list of possible classifications with which the Common Council could label a particular zone. The Site Plan Review Agency was powerless to act pursuant to this ordinance until the second ordinance, creating the Pine Bush Site Plan Review District, was enacted. In the second ordinance, Common Council enacted a specific framework of criteria to be considered by the Agency in passing upon an application.[2] The criteria did not allow the *205 unchecked discretion of the Site Plan Review Agency (see, Matter of Tandem Holding Corp. v Board of Zoning Appeals, 43 NY2d 801). On the contrary, the standards listed in the second ordinance, as well as the guideline in the first ordinance itself that the office buildings be single story or otherwise conform to the land contour, adequately bridle the discretion of the Agency. Therefore, taken in context with the sections of the entire zoning ordinance and recognizing that the Site Plan Review Agency’s discretion to allow office buildings higher than one story was limited by its examination of the land contour by the first ordinance, the first ordinance is neither vague nor an improper delegation of authority.
IV.
The next question is whether the City’s failure to consider in the EIS for Anderson’s project the cumulative impact of as many as 10 pending proposals covering 295.5 acres violated its obligations under SEQRA pursuant to 6 NYCRR 617.11 (a) (11) and (b) or 6 NYCRR 617.15 (a) (l).[3] Defendants-respondents argue that analysis of cumulative impact is not mandatory when projects under consideration are separately owned. We disagree.
While the regulations provide that the agency may choose, in its discretion, not to examine the cumulative impact of separate applications within the same geographic area (6 NYCRR 617.15 [a] [1]), the applications involved in this case *206 are not separate, but related, and, thus, are subjects for mandatory study under 6 NYCRR 617.11 (a) (11) and (b). In Chinese Staff & Workers Assn. v City of New York (68 NY2d 359), we held that the City of New York had failed to fulfill its City Environmental Quality Review (CEQR) obligations by neglecting to examine the cumulative impact that the seven luxury apartment buildings contained in the City’s plan for the Special Manhattan Bridge District would have on the displacement of low-income residents and on the character of the historic Chinatown district (id., at 367-368). We considered those projects related, thus requiring analysis of cumulative impact, not because of any commonality of ownership of the proposed buildings, but rather because they were all part of a plan designed to add to the City’s housing stock while preserving the scale and character of the Chinatown community (id., at 367). Although the holding in that case rested upon a provision of CEQR which is not applicable here, the corresponding SEQRA provision, 6 NYCRR 617.11 (b) (1), is virtually identical.
As in Chinese Staff, the project at issue in this case is only a part of a larger plan designed to resolve conflicting specific environmental concerns in a subsection of a municipality with special environmental significance (cf., Kleppe v Sierra Club, 427 US 390). Where a governmental body announces a policy to reach a balance between conflicting environmental goals— here, commercial development and maintenance of ecological integrity — in such a significant area, assessment of the cumulative impact of other proposed or pending developments is necessarily implicated in the achievement of the desired result. Since "SEQRA mandates a rather finely tuned and systematic balancing analysis in every instance” (Matter of Town of Henrietta v Department of Envtl. Conservation, 76 AD2d 215, 223), the City should have considered each of the factors listed in ECL 8-0109 and 6 NYCRR 617.11, identified any factor upon which the proposed action might have a significant effect and taken a "hard look” at it (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 416-417). Thus, under the special circumstances which exist here, the City of Albany’s failure to consider the potential cumulative impact of other pending projects with the Anderson application upon the Pine Bush before granting the zoning change constituted a violation of its obligations pursuant to SEQRA. The determination to grant Anderson’s application for a zoning change to C-PB Commercial-Pine Bush was, *207 therefore, arbitrary and capricious and the ordinance must be declared null and void (Chinese Staff & Workers Assn. v City of New York, supra, at 369; Matter of Tri-County Taxpayers Assn. v Town Bd., supra).
V.
We have examined the remaining contentions of plaintiffs-petitioners and find them to be without merit.
Accordingly, the order of the Appellate Division should be modified, without costs, by reinstating so much of the first cause of action as seeks a declaration that the ordinance is vague and constitutes an overbroad delegation of authority, and declaring that the ordinance is not invalid in these respects.
Chief Judge Wachtler and Judges Kaye, Alexander, Hancock, Jr., and Bellacosa concur; Judge Simons taking no part.
Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.

. Plaintiffs/petitioners argue essentially that the ordinance was invalid because of an overbroad grant of legislative power to the Site Plan Review Agency.

. The criteria, contained in section 5 of the new article 7-A of the zoning ordinance, are as follows:
"1. Location, arrangement, size, design and general site compatibility of buildings, lighting and signs.
"2. Overall impact on the neighborhood including compatibility of design considerations.
"3. Adequacy and arrangement of vehicular traffic access and circulation, including intersections, road widths, pavement surfaces, dividers and traffic controls.
"4. The location and arrangement of off-street parking, delivery and loading areas.
"5. Adequacy and arrangement of pedestrian traffic improvements and overall pedestrian convenience.
"6. Adequacy of stormwater and drainage facilities.
"7. Adequacy of water supply and sewage disposal connections.
"8. Type and arrangement of trees, shrubs, fencing and any other improvements proposed as a visual and/or noise buffer between the subject parcel and adjoining lots.
*205 "9. Adequacy of fire lanes and other emergency zones.
"10. Adequacy of exterior storage areas and their fencing or screening.
"11. Special attention to the adequacy and impact of structures, roadways and landscaping in areas with susceptibility to ponding, flooding and/or erosion.”

. 6 NYCRR 617.11 (a) includes the following in its list of indicia of significant effects on the environment: "(11) two or more related actions undertaken, funded or approved by an agency, no one of which has or would have a significant effect on the environment, but which cumulatively meet one or more of the criteria in this section.”
6 NYCRR 617.11 (b) provides, in relevant part: "For the purpose of determining whether an action will cause one of the foregoing consequences, the action shall be deemed to include other simultaneous or subsequent actions which are * * * included in any long-range plan of which the action under consideration is a part”.
6 NYCRR 617.15 (a) (1) states: "A programmatic or generic environmental impact statement may be used to assess the environmental effects of * * * a number of separate actions in a given geographic area which, if considered singly may have minor effects, but if considered together may have significant effects”.