In the Matter of NEW SCOTLAND AVENUE NEIGHBORHOOD ASSOCIATION et al., Appellants, v PLANNING BOARD OF THE CITY OF ALBANY et al., Respondents, and JASON MINICK et al., Intervenors-Respondents.

Third Department, December 8, 1988

259

APPEARANCES OF COUNSEL

*Oliver & Oliver (Lewis B. Oliver, Jr.,* of counsel), for appellants.

*Vincent J. McArdle, Jr., Corporation Counsel (Gerard E. Maney* of counsel), for respondents.

*Tabner & Laudato (William F. Ryan, Jr.,* of counsel), for intervenors-respondents.

OPINION OF THE COURT

CASEY, J. P.

In January 1987 respondent Planning Board of the City of Albany, by a vote of 3 to 0, granted the initial application of intervenor Jason Minick for subdivision plat approval for the construction of a 124-unit town house project on a 25.3-acre site known as the New Scotland Woods subdivision, pursuant to the provisions of the residential cluster development ordinance enacted by the city's Common Council on September 6, 1984. This approval was revoked, however, when it was discovered that the approval lacked the enhanced majority required by General Municipal Law §§ 239-m and 239-n. As a result,

petitioners' CPLR article 78 proceeding that had been commenced in February 1987 was dismissed for mootness.

On April 24, 1987 Minick recommenced the plat approval process. Accompanying this application was the original plat plan, an amended subdivision plan, an amended environmental assessment form (hereinafter EAF) and a grading plan for the proposed site. At the first of several public hearings, held on April 28, 1987, residents voiced their opposition and a physical engineer, who was an associate professor at Rensselaer Polytechnic Institute, stated that only 80 to 90 of the 124 proposed units were realistically buildable because of the contour of the site that contained steep slopes and had a grade of soil called "Albany Clay", which is unique to the Albany area in its unstable components. After this hearing, Minick submitted a new grading plan that altered the location of approximately 25% of the clustered units and also a geotechnical engineering report of the soil conditions at the site. As a result, petitioners, consisting of the New Scotland Avenue Neighborhood Association, its president and two nearby residents and homeowners, requested that the Planning Board require the preparation of an environmental impact statement (hereinafter EIS) before approval of the subdivision. The Planning Board ultimately determined that an EIS was unnecessary and issued a negative declaration of environmental impact, and conditionally approved the plat in June 1987 subject to the filing of a performance bond sufficient for the completion of all site improvements.

On July 23, 1987 petitioners commenced this proceeding against the City of Albany and its Planning Board, challenging the validity of both the residential cluster development ordinance and the Planning Board's approval of the subdivision, and seeking a combination of CPLR article 78, declaratory and injunctive relief. The parties stipulated to the intervention of Minick and Fort Orange Realty, Inc. as parties, and Supreme Court issued an order to that effect. Prior to the return date of the petition, petitioners sought judicial enforcement of the automatic stay provided by General City Law § 38 during the pendency of the Supreme Court proceeding, inasmuch as Minick and the city had permitted grading and filling at the site to begin. Supreme Court conditioned the stay on the posting of a $125,000 bond by petitioners. Since the bond was not posted, construction commenced at the site in the summer of 1987. In a cursory one-page decision, Supreme

Court dismissed the six causes of action in the petition. Petitioners appeal from the judgment entered thereon.

■ We first note that petitioners' failure to post the undertaking in the amount of $125,000, as ordered by Supreme Court and affirmed by this court, resulted in the construction of a substantial portion of the project at a cost in excess of $5,000,000. Petitioners thereby lost any entitlement to injunctive relief, since, as a general rule, an injunction will not issue to prohibit a fait accompli *(Matter of E.F.S. Ventures Corp. v Foster,* 71 NY2d 359, 372; *Matter of Friends of Pine Bush v Planning Bd.,* 86 AD2d 246, *affd* 59 NY2d 849).

■ As to the validity of the residential cluster development ordinance, petitioners' sixth cause of action, alleging the city's failure to comply with the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA) in enacting the ordinance on September 6, 1984, is barred by the Statute of Limitations. We reject petitioners' argument that their challenge to the ordinance based on SEQRA violations is timely since they were not aggrieved by the enactment of the ordinance until it was applied to property in their neighborhood. This court used similar reasoning in *Matter of Save the Pine Bush v City of Albany* (117 AD2d 267, 269, *mod* 70 NY2d 193), but the Court of Appeals held that the time to complain of SEQRA violations in the enactment of a zoning ordinance was within four months of the date of the enactment. In the *Save the Pine Bush* case, the Court of Appeals found that the effect of the enactment of the zoning ordinance, with its new classification applicable to the Pine Bush area of the City of Albany, coupled with the Common Council's concurrent announcement of a policy to permit commercial development in the Pine Bush, committed the city to a definite course of future decisions *(Matter of Save the Pine Bush v City of Albany,* 70 NY2d 193, 203, *supra).* This commitment did not, however, trigger the running of the Statute of Limitations. Rather, the court held that it constituted an "action" within the meaning of SEQRA, triggering the requirement of "SEQRA review * * * before any specific applications were needlessly studied" *(supra,* at 203). The court concluded, "Inasmuch as consideration of possible detrimental effects of this action should have been given at the earliest possible time * * * the time to complain of SEQRA violations in the enactment of this ordinance was within four months of the date of the enactment" *(supra,* at 203). In the case at bar, the ordinance authorizing the Planning Board to permit or require residential cluster develop-

ment does not apply to a specific area of the city. Nor was there an announcement of a policy to apply the ordinance. Nevertheless, the enactment of the ordinance clearly constituted an "action" within the meaning of SEQRA (6 NYCRR 617.2 [b] [3]), triggering the requirement of SEQRA review before any specific applications of the ordinance were needlessly studied. Since the enactment of the ordinance was an action requiring SEQRA review at the earliest possible time, "the time to complain of SEQRA violations in the enactment of this ordinance was within four months of the date of the enactment" *(Matter of Save the Pine Bush v City of Albany,* 70 NY2d 193, 203, *supra).*

■ Petitioners further attack the validity of the residential cluster development ordinance on the ground that the Common Council, when delegating its zoning powers to the Planning Board upon enacting the ordinance, did not mandate that the Planning Board adopt rules and regulations as required by General City Law § 37, the enabling legislation for residential cluster development. While the ordinance does not contain an express provision mandating the promulgation of rules and regulations, it does provide that the Planning Board "shall have the authority to permit or require residential cluster development and establish rules and regulations setting forth the conditions under which clustering would be required" (Zoning Ordinance of City of Albany § 27-98.2 [a]). Pursuant to this provision, the Planning Board promulgated rules and regulations for the establishment of residential cluster developments prior to the subdivision approval at issue herein, and we find the rules and regulations sufficiently definite to accomplish their intended purpose to guide the discretion of the Planning Board. In these circumstances, there has been compliance with both the letter and spirit of General City Law § 37.

■ Turning to petitioners' challenge to the validity of the Planning Board's approval of the subdivision, we first reject their claim that the Planning Board failed to comply with SEQRA. Petitioners contend that the proposed subdivision is a type I action, which "carries with it the presumption that it is likely [to] have a significant effect on the environment and may require an EIS" (6 NYCRR 617.12 [a] [1]), but the record does not support petitioners' claim that the subdivision is contiguous to a publicly owned or operated parkland, recreation area or designated open space *(see,* 6 NYCRR 617.12 [b] [10]). Nor does the project require the adoption of either a

change in allowable use within the zoning district or a zoning change, since both the use and the zoning designation remain residential *(see,* 6 NYCRR 617.12 [b] [2], [3]). The Planning Board, therefore, properly considered the proposed subdivision an unlisted action (6 NYCRR 617.2 [kk]). Based upon a review of the record, which is replete with investigative reports and analyses, several of which were completed by engineers who were employed at the request of the Planning Board to satisfy its environmental concerns about the suitability of the site for cluster development, it is our view that the Planning Board, as lead agency, took the necessary "hard look" at the relevant areas of environmental concern and made a "reasoned elaboration" of the basis for its determination *(see, Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 417). The conditional negative declaration herein was properly issued since the Planning Board made a thorough investigation of the problems involved and reasonably exercised its discretion *(see, Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359, 364). Having concluded that the Planning Board satisfied the procedural and substantive requirements of SEQRA, this court's role is complete *(Matter of Jackson v New York State Urban Dev. Corp., supra,* at 416).

■ ■ Next, there is no merit in petitioners' claim that the Planning Board's approval of the subdivision violated the density requirements of General City Law § 37 and the corresponding provision of the city ordinance. In authorizing the establishment of clustered subdivision development, General City Law § 37 requires that the density of population or building cover of the cluster development not be greater than would be "permitted in the district wherein such land lies as shown on the official zoning map". The city ordinance, therefore, requires that the Planning Board "first determine the realistic capacity of the site if developed as a conventional subdivision" (Zoning Ordinance of City of Albany § 27-98.3 [c]). The Planning Board found that the 124-unit subdivision proposed by Minick did not exceed the limitation imposed by General City Law § 37, and the record provides a rational basis in substantial evidentiary support for the finding. Minick submitted a conventional subdivision plat for the site, meeting applicable zoning requirements, which showed 124 single-family home sites. Petitioners contend that the contour and soil conditions of the site make it unsuitable for conventional development and that, therefore, 124 units is not a realistic capacity. Although petitioners point to expert proof in the

record to support their contention, there is also expert proof that the site is suitable for conventional subdivision development using standard construction techniques. Petitioners further contend that the Planning Board erred in considering an additional 2.6-acre parcel, which was included in Minick's second application for subdivision approval, since Minick did not own that parcel. The record, however, establishes that Minick was negotiating with the County of Albany, which owned the landlocked parcel as a result of a tax foreclosure, and that the county considered the property as surplus and was anxious to find a buyer. In these circumstances, we see no error in the inclusion of this parcel as part of the proposed subdivision site.

Lastly, we reject petitioners' argument that the Planning Board's approval of the subdivision violated General City Law § 33. The Planning Board's approval was conditioned, *inter alia,* upon a performance bond "sufficient for the completion of all site improvements * * * [to] be filed * * * prior to the stamping of the final subdivision plat by the Planning Board Chairman". In our view, this conditional approval complied with the bonding requirement of General City Law § 33 *(cf., Matter of Save the Pine Bush v Planning Bd.,* 130 AD2d 1, 5, *lv denied* 70 NY2d 610).

For the reasons discussed, Supreme Court's judgment should be affirmed.

WEISS, MIKOLL, YESAWICH, JR., and LEVINE, JJ., concur.

Judgment affirmed, without costs.