OPINION OF THE COURT
Ralph A. Beisner, J.
The respondent Dutchess County Resource Recovery Agency (the Agency) is a public benefit corporation established in 1982 by the New York State Legislature (Public Authorities Law, tit 13-D, §§ 2047-a — 2047-x). It is charged with the responsibility of planning and implementing a solid waste management program for the County of Dutchess. (Public Authorities Law § 2047-e.) In 1987 the Agency commenced an environmental impact analysis in accordance with the New York State *725 Environmental Quality Review Act (SEQRA). (ECL art 8; 6 NYCRR part 617). The State Legislature has declared the stated purpose of SEQRA:
”8. It is the intent of the legislature that all agencies conduct their affairs with an awareness that they are stewards of the air, water, land, and living resources, and that they have an obligation to protect the environment for the use and enjoyment of this and all future generations.
"9. It is the intent of the legislature that all agencies which regulate activities of individuals, corporations, and public agencies which are found to affect the quality of the environment shall regulate such activities so that due consideration is given to preventing environmental damage.” (ECL 8-0103 [8], [9].)
The object of the Agency’s analysis was to determine the environmental impact of the implementation of a countywide recycling program, expansion of the existing resource recovery facility in Poughkeepsie, selection of sites for an ash residue landfill and bypass waste landfill and the implementation of a Host Community Benefit Program for those municipalities selected as the sites of the ash residue and the bypass waste landfills.
After declaring itself "lead agency” in the SEQRA process (ECL 8-0111) the Agency in June and July 1987 issued a positive declaration (6 NYCRR 617.10 [b]) and initiated the preparation of a draft environmental impact statement on solid waste management (DEIS). The Agency retained the services of International Technologies Corporation in connection with this environmental review. On or about August 5, 1988 the Agency issued a draft environmental impact statement on solid waste management. The Agency then held public hearings and received written comments through October 24, 1988. On or about March 10, 1089 the Agency approved a final environmental impact statement on solid waste management (FEIS) at an open public meeting. After approximately three months of further review and workshop sessions the Agency formally adopted a findings statement on May 24, 1989. The findings statement and the FEIS concluded, inter alla, that a certain site in the Town of Red Hook is the preferred location for the construction of the ash residue landfill.
In this proceeding pursuant to CPLR article 78 the petitioner Town of Red Hook seeks judgment declaring null and *726 void that portion of the FEIS dated March 10, 1989 and the findings statement issued by the Agency on May 24, 1989 which designates a certain location in the Town of Red Hook as the preferred site of an ash residue landfill. The petition alleges that the Agency’s environmental review does not comply with the requirements of SEQRA because, inter alla, it has not completed its studies with respect to wetlands, depth to groundwater and bedrock on the proposed Red Hook site.
The Agency has moved to dismiss the petition on several grounds. According to respondent at this time only one phase of the SEQRA process has been completed with respect to the landfill study. Site-specific environmental reviews, such as hydrogeologic studies, must still be completed. If these studies indicate problems with the site that cannot be mitigated the Agency will not pursue an application to the New York State Department of Environmental Conservation (DEC) for a landfill permit. If the Agency does apply for this landfill permit, that application procedure provides for a full administrative hearing process including an environmental impact statement. Thus, respondent argues, judicial review is inappropriate because site-specific hydrogeological studies have not yet been done and the impact of the FEIS is not final as to the Red Hook site and does not inflict any actual injury on the town. The harm anticipated by the town is contingent on the issuance by the DEC of a permit to construct a landfill so this alleged controversy cannot be considered ripe for judicial review.
As the petitioner notes, the Agency is urging in effect that any judicial review of its compliance with SEQRA be deferred until the completion of the DEC landfill permit application proceedings. The FEIS and the findings statement approved by the Agency have designated the Red Hook site as the preferred location of the ash residue landfill and no alternative site is suggested.
The term "actions” as defined in SEQRA (22 NYCRR 617.2 [b] [2]) includes agency planning and policy-making activities that may affect the environment and commit the Agency to a definite course of future decisions. By adopting the resolutions approving the FEIS and findings statements the Agency committed itself to a definite course of future action with a distinct impact on the Town of Red Hook and thus these resolutions constitute a final determination subject to review by the court. (Matter of Save the Pine Bush v City of Albany, 70 NY2d 193, 203; Matter of Wing v Coyne, 129 AD2d *727 213, 217; see, Matter of New Scotland Ave. Neighborhood Assn. v Planning Bd., 142 AD2d 257.)
The Agency’s contention that the determination is not final because further studies are required will be addressed later in the opinion. The fact that further studies in preparation for and in conjunction with an application to DEC for a landfill permit does not make review of the already approved FEIS and findings statement premature. The issuance of the DEC permit, if it occurs, will be subject to review in its own right (see, Matter of Congdon v Washington County, 130 AD2d 27, 33; cf., Matter of Palmer v New York State Dept. of Envtl. Conservation, 132 AD2d 996).
The Agency next argues that the petition must be dismissed because the town failed to exhaust its administrative remedies. Specifically the Agency claims that the petitioner’s comments on the DEIS during the formal comment period were limited to only three of the environmental issues set forth in the petition, i.e., wetlands, depth to groundwater and impacts on public and private water supplies. Since, however, all of the objections raised in the petition were voiced by petitioner or by others during the administrative process, the Agency’s petition to dismiss on this ground is denied (see, Aldrich v Pattison, 107 AD2d 258, 268).
The FEIS and findings statement approved by the Agency which selected Red Hook as the preferred location for the ash residue landfill specifically provides for further site-specific hydrogeological studies regarding wetlands, groundwater, surface water and depth to bedrock. The Agency concedes that its SEQRA review is incomplete and has argued that this is a basis for finding the petition to be premature. It proposes to complete these site-specific studies and, if they are favorable, seek a landfill permit from the DEC. The Agency contends the future site-specific environmental impact statement will be prepared in connection with its application for a DEC landfill permit. Presumably any review of the results of the site-specific groundwater studies will be subsumed in an eventual EIS review by DEC during its determination on the landfill permit application, if this occurs. The Agency’s procedure is troubling to the court.
At issue on this application is the Agency’s action in approving the FEIS and findings statement when conceding they are incomplete. When the approval of a proposed project is sought to be set aside on the ground that the lead agency in *728 the SEQRA process bases its determination upon a FEIS which is claimed to be deficient with respect to the scope or lack of coverage devoted to specific environmental concerns, mitigating measures or project alternatives, the judicial standard of review is whether the lead agency has taken a "hard look”. (H.O.M.E.S v New York State Urban Dev. Corp., 69 AD2d 222, 232; Aldrich v Pattison, 107 AD2d 258, 265, supra.) The "hard look” standard requires a court to determine whether the Agency identified the relevant areas of environmental concern, took a "hard look” at them and made a "reasoned elaboration” of the basis for its determination. (Aldrich v Pattison, supra.) In reviewing the content of a FEIS, SEQRA is to be construed in light of the rule of reason. (Matter of Town of Henrietta v Department of Envtl. Conservation, 76 AD2d 215.) A court may only annul a determination as to the sufficiency of an environmental impact statement and the environmental consequences of the proposed project " 'if it is not rational — if it is arbitrary and capricious or unsupported by substantial evidence’ ”. (Aldrich v Pattison, supra, 107 AD2d, at 267, quoting Town of Hempstead v Flacke, 82 AD2d 183, 187.)
On this record the court is unable to find that the "hard look” standard has been met when a hydrogeological study has not yet been commenced and various issues with respect to water concededly require further study (see, Matter of Schenectady Chems. v Flacke, 83 AD2d 460). The court must stress that the Agency’s use of a phased approach to its environmental review is not unacceptable. Rather it is the failure to complete the necessary water studies before issuing the FEIS which is objectionable. By this approach the Agency would effectively insulate the results of these studies from the court’s review of the Agency’s SEQRA process. Later judicial review of the DEC’s granting of a landfill permit, if that occurs, does not cure this defect. The Agency has purported to adopt a final EIS concerning the siting of a landfill without studying the environmental impact of that landfill on groundwater. One must ask what is "final” about that? Can the Agency have taken a "hard look” at the environmental impact of a landfill without a hydrogeological study? Such an EIS cannot be defined as "final” when it defers such an obvious study. While the permit application procedure requires, among other things, the submission of a hydrogeological report (6 NYCRR 360-2.3) it is a separate and distinct proceeding, subject to separate review.
*729 The Agency compares its review procedure to the process described in two reported cases which the court finds are factually distinguishable. In Matter of Residents for More Beautiful Port Washington v Town of N. Hempstead (149 AD2d 266), which the Agency discusses at length in its reply memorandum, the second phase of the SEQRA review which culminated in the issuance of the Agency’s findings proposing a preferred site followed an environmental review which included considerations such as groundwater quality (149 AD2d, at 270-271). In Town of Dryden v Tompkins County Bd. of Representatives (144 Misc 2d 873), which the Agency also cites to illustrate the use of a phased environmental review, the hydrogeological investigation of the proposed site, Phase III of the multiphase landfill study, preceded the completion of the Agency’s FEIS (144 Misc 2d, at 875).
The Agency, on the other hand, has issued its findings without completing its review and the further studies in the preparation of a site-specific environmental impact statement are to be prepared in connection with an entirely separate and independent permit application process. Because of the Agency’s failure to take a hard look at an area of potential environmental impact, its action was arbitrary and capricious (see, Matter of Save the Pine Bush v City of Albany, 141 AD2d 949).
Accordingly, the Agency’s motion to dismiss the petition is denied and the petition is granted to the extent that the FEIS dated March 10, 1989 and the findings statement issued May 24, 1989 are declared null and void and the matter is remitted to the respondent Agency for further environmental review.
The procedural posture of this article 78 proceeding merits comment. The Agency elected to move to dismiss the petition rather than file an answer. CPLR 7804 (f) permits a respondent to raise an objection in point of law by setting it forth either in his answer or by a motion to dismiss. The Agency’s motion to dismiss this proceeding does not confine itself to objections in point of law. It also addresses the merits of the petition itself which should properly be the subject of the answer and affidavits or other written proof. (CPLR 7804 [d], [e].) The court, on notice to the parties, converted the Agency’s motion to dismiss to one for summary judgment, a procedure endorsed by the Agency. Since the court’s determination is premised on the concededly incomplete environmental review undertaken by the Agency and since the Agency *730 itself sought review on the merits in its motion to dismiss, the Agency is not prejudiced by the granting of the petition prior to the service of the Agency’s answer (see, Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs., 63 NY2d 100, 101-102; O’Hara v Del Bello, 47 NY2d 363).