In the Matter of JOHN MONTEIRO, Appellant-Respondent, v TOWN OF COLONIE et al., Respondents-Appellants.

Third Department, July 19, 1990

## APPEARANCES OF COUNSEL

*Harvey and Harvey, Harvey & Mumford (Jonathan P. Harvey of counsel), for appellant-respondent.*

*Susan Marie Tatro* for respondents-appellants.

## OPINION OF THE COURT

LEVINE, J.

Petitioner, as a resident of the Town of Colonie (hereinafter the Town), Albany County, and another person allegedly similarly situated, brought this CPLR article 78 proceeding to challenge a determination of respondent Planning Board of the Town giving final approval to plans for a proposed major expansion of the Colonie Center Shopping Mall (hereinafter Colonie Center). Colonie Center is a large multistore shopping mall, originally built in the 1960s, serving the Capital District and bordered by Central Avenue, Wolf Road and Sand Creek Road in the Town. Of the grounds for annulment set forth in the petition, the only one pressed on appeal is that the Planning Board violated the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA) by approving this expansion project without first requiring the processing and completion of an environmental impact statement. Prior to answering the petition, respondents moved to dismiss on the grounds that petitioners lack standing, that all of the causes of action were time barred by the applicable four-month Statute of Limitations *(see,* CPLR 217) and that petitioners were guilty of laches.

Supreme Court ruled that both petitioners had standing but that they were barred from proceeding by both the Statute of Limitations and the doctrine of laches.* These cross appeals ensued.

There should be an affirmance. We assume, without deciding, that petitioner has standing *(see, Matter of Roman Catholic Diocese v New York State Dept. of Health,* 66 NY2d 948, 951). His petition, however, was time barred. Under the Town's ordinances (Code of Town of Colonie §§ 190-29—190-31), proposals for new commercial developments and for alterations of and additions to existing commercial developments require Planning Board review and approval in a two-step

---

* It appears that the other petitioner has been severed from the proceeding by subsequent order of Supreme Court, and has not joined in this appeal.

process: first, the submission for approval of a concept development plan locating the general massing of buildings, parking, traffic circulation routes and landscaping, and the project's "scope of operation, purpose, justification and impact on the immediate area of influence and the town in general" (Code of Town of Colonie § 190-30 [A]), and second, final site development approval (Code of Town of Colonie § 190-31).

An application for concept development approval for the Colonie Center expansion was submitted on behalf of the owners in May 1983 and included general plans, descriptive material and an environmental assessment form. The expansion project was to consist of three phases. Phase I was the addition of a 100,000-square-foot third story on the existing Macy's Department Store, phase II was to be the construction of a new 150,000-square-foot department store and phase III was to be the construction of a 90,000-square-foot area for smaller stores and an underground parking garage. Later in 1983, the owners applied for and obtained the necessary zoning variance and submitted additional environmental materials in the form of a traffic impact study and a storm water management report. The State Departments of Transportation and Environmental Conservation were put on notice of the project. The owners' project manager and consulting firm also responded to inquiries and concerns regarding, *inter alia,* the scheduling of the project phases, landscaping and adjacent public roadway changes to accommodate anticipated additional traffic. On January 17, 1984 the Planning Board determined that, subject to ameliorating modifications and additions regarding roadway improvements and traffic control devices, a timetable for required landscaping during the project's phases and a schedule for construction of storm water management facilities, the expansion project would not have a significant impact upon the environment. Accordingly, the Planning Board issued a conditional negative declaration embodying the additional measures required, and gave concept approval to the project. This action was reported in the news media and was published by the Department of Environmental Conservation in the Environmental News Bulletin.

For the next several succeeding years, Colonie Center took various steps in implementing concept approval, including the payment of some $325,000 to the Town to cover the cost of certain road improvements required by the conditional negative declaration. In March 1988, however, an amended application for concept development approval was filed in which

several modifications in the initial concept plans were made, namely, new construction was increased from 340,000 square feet to some 468,000 square feet (mostly to accommodate a larger new Macy's store), and certain existing structures were to be removed. However, the over-all result of the modifications in their final form did not significantly change the total square footage of building area at Colonie Center from that of the 1983 concept plans, nor the total size of parking and landscaped areas. After the amended application was reviewed and further changes made, the Planning Board, in April 1988, determined that the original conditional negative declaration was still applicable and valid. It then approved the concept plans as amended.

On May 24, 1988, the Planning Board gave final site development approval to phase I of the expansion project. This was followed on December 20, 1988 by the Planning Board's approval of the final site development plans and design drawings for the remaining phases of the expansion project, again based upon a determination that the 1984 conditional negative declaration still remained valid.

This proceeding was not commenced until January 19, 1989. In order to determine what event triggered the running of the Statute of Limitations, we must first ascertain what administrative decision petitioner is actually seeking to review and then find the point when that decision became final and binding and thus had an impact upon petitioner (see, Matter of Villella v Department of Transp., 142 AD2d 46, 48, lv denied 74 NY2d 602; Matter of Wing v Coyne, 129 AD2d 213, 217). Here, petitioner's basic complaint is that the Planning Board violated SEQRA in approving the Colonie Center expansion project through a conditional negative declaration rather than subjecting it to the requirement of an environmental impact statement. As to such SEQRA determinations, the Statute of Limitations begins to run when the agency adopts plans committing it to a course of action which may affect the environment (see, 6 NYCRR 617.2 [b] [2]; Matter of Save the Pine Bush v City of Albany, 70 NY2d 193, 203). We agree with Supreme Court that the Planning Board became thus committed as to the Colonie Center expansion project when it issued the conditional negative declaration and then gave the project concept development approval in January 1984. At that point, the expansion plans had clearly gone "beyond the stage of [being] tentative, long-term proposals for further study" (Matter of Stewart Park & Reserve Coalition v New York State

*Dept. of Transp.,* 157 AD2d 1, 11) to that of a "specific project plan for the development \* \* \* actually formulated and proposed" *(Matter of Programming & Sys. v New York State Urban Dev. Corp.,* 61 NY2d 738, 739). Because of the legislative policy favoring environmental review at the earliest possible time *(see,* ECL 8-0109 [4]), the time to complain of SEQRA violations was within four months of the concept approval of the highly definite and explicit Colonie Center expansion project proposal *(see, Matter of Save the Pine Bush v City of Albany, supra; see also, Matter of Sun Beach Real Estate Dev. Corp. v Anderson,* 98 AD2d 367, 373-374, *affd* 62 NY2d 965 [preliminary plot plan approval of a real estate development triggers SEQRA review]).

Petitioner attempts to avoid the result of the foregoing analysis by claiming that subsequent modification in the expansion project effectively constituted a "new action" for SEQRA purposes. This is also unavailing, even were we to disagree with the Planning Board's reasonable determination that the revised project was not so drastically different as to fall outside the earlier conditional negative declaration. Beyond peradventure, the Planning Board was committed to a course of action on the revised expansion project when it gave concept approval to it, ruled that the 1984 conditional negative declaration applied and then gave final site development approval to the first phase thereof. Thus, the very latest date when the Statute of Limitations commenced to run was May 24, 1988 and this proceeding, initiated some eight months later, was time barred.

MAHONEY, P. J., CASEY, WEISS and HARVEY, JJ., concur.

Judgment affirmed, with costs to respondents.

# MEMORANDA

OF

*DECISIONS RENDERED DURING THE PERIOD EMBRACED IN THIS VOLUME*