*104 OPINION OF THE COURT
Edward H. Lehner, J.
In the CPLR article 78 proceeding petitioners seek to annul the subject resolution of the Board of Estimate (BOE) for failure to comply with the requirements of the State Environmental Quality Review Act (SEQRA).
By resolution of May 4, 1989 the BOE rezoned the entire block bounded by Eleventh and Twelfth Avenues and 41st and 42nd Streets (the Site) from an M2-3 (medium density manufacturing) to a C6-4 district (high density commercial or residential development). Currently the Site, which is owned by the intervener Silverstein 42nd Associates (Associates), is used as a grade level parking lot.
As a result of the change, the maximum floor area ratio (FAR) is increased from 2 to 10, with a possible bonus to 12. This results in increasing the permissible development of total floor area on the Site from 316,000 square feet to 1,600,000 square feet (assuming a FAR of 10).
Because Associates, which had applied for the change, had not submitted any specific project for the Site, the final environmental impact statement (FEIS), as certified complete on March 10, 1989, examined a "range of potential development impacts” by employing what is referred to in defendants’ papers as "the largest allowable commercial and/or residential development which could be constructed as-of-right in a C6-4 zone”, to wit, 10 and 12 FAR office plans and 10 and 12 FAR residential projects.
Prior to the approval of the zoning change by the BOE, a declaration restricting the manner of development was accepted by the developer, which restrictions include setback requirements that "run with the land”.
Pursuant to subdivision (2) of ECL 8-0109, all local governmental agencies are required to "prepare, or cause to be prepared by contract or otherwise an environmental impact statement on any action they propose or approve which may have a significant effect on the environment.”
Having resolved the attack based on an alleged inadequate FEIS, the court comes to what is (surprisingly) a novel issue. That relates to the fact that the rezoning was accomplished without any specific project in mind, and that upon its unconditional approval by the court, Associates or any subsequent owner could construct any one of a large variety of projects on the Site without further environmental review.
*105 "[CJhanges in a zoning ordinance constitute 'actions’ for the purposes of SEQRA review” (Matter of Brew v Hess, 124 AD2d 962, 964 [3d Dept 1986]; accord, Matter of Save the Pine Bush v City of Albany, 70 NY2d 193 [1987]; Kirk-Astor Dr. Neighborhood Assn. v Town Bd., 106 AD2d 868 [4th Dept 1984]; Matter of Badura v Guelli, 94 AD2d 972 [4th Dept 1983]; Matter of Williamsville Southeast Amherst Homeowners Assn. v Sharpe, 110 AD2d 1074 [4th Dept 1985]; Matter of Strathmore Hills Civic Assn. v Town of Huntington, 146 AD2d 783 [2d Dept 1989]).
Under 6 NYCRR 617.12 the following zoning amendments are considered Type I actions, which classification raises a "presumption that it is likely to have a significant effect on the environment and may require an EIS” (subd [a] [1]):
"(1) the adoption of a municipality’s land use plan, the adoption by any agency of a comprehensive resource management plan or the initial adoption of a municipality’s comprehensive zoning regulations;
"(2) the adoption of changes in the allowable uses within any zoning district, affecting 25 or more acres of the district;
"(3) the granting of a zoning change, at the request of an applicant, for an action that meets or exceeds one or more of the thresholds given elsewhere in this list” (6 NYCRR 617.12 M).
Since the subject zoning change would not come within section 617.12 (b) (1) or (2), the only possible specific Type I classification would be under subdivision (3), but, due to the fact that no specific project has been proposed, this subdivision is also inapplicable. However, section 6 (a) (8) of the City Environmental Quality Review Procedure (CEQR) provides that an action may have a significant effect on the environment if it can reasonably be expected to lead to "a substantial change in the use of intensity of use of land”. But whether or not the zoning change would be classified as Type I does not determine whether an EIS would be required as the "Type I list is not exhaustive of those actions that an agency determines may have a significant effect on the environment and require the preparation of an EIS” (6 NYCRR 617.12 [a] [1]).
In examining the cases found relating to SEQRA filings in connection with a zoning change, the court observed that in each case the amendment either (i) related to a specific project or (ii) required further governmental action (such as the granting of a permit), with the consequence that a subsequent *106 EIS was mandated. No case was located where the amendment resulted in an "as of right” ability of the owner to construct a wide variety of projects with no further environmental review. To grant such a right would do violence to the intent of the Legislature when it adopted SEQRA.
In Matter of Jackson v New York State Urban Dev. Corp. (67 NY2d 400), the FEIS informed the public that the configuration of the project was not final and that the developer would probably request certain modifications. The agency involved determined that the modifications would have no significant environmental impact, with which conclusion petitioners did not disagree. However, they contended that "any” change in the project described in the FEIS required a supplemental environmental impact statement (SEIS) addressed to the proposed changes. The Court of Appeals (at 429), noting that "strict compliance with prescribed procedures is required”, and that "nothing in SEQRA or its regulations expressly calls for [the] issuance of a SEIS”, concluded (at 429-430): "However, an agency making a final decision about a project must make findings that the environmental concerns of the act have been considered and satisfied (6 NYCRR 617.9 [c]; see also, 21 NYCRR 4200.12 [b]), and from this it may reasonably be inferred that an agency must prepare a SEIS if environmentally significant modifications are made after issuance of a FEIS * * *. Whether or not a modification is significant is generally a decision to be made by the agency after taking a 'hard look’ ”. Since the court found that the agency had taken the requisite "hard look” at the modifications before concluding that no significant impact would occur, it held that no SEIS would be required.
In this connection the court finds that the authorization for a "generic” EIS in the regulations is helpful in showing the path the court should follow in resolving this question. 6 NYCRR 617.15 provides:
"(a) A generic EIS may be used to assess the environmental effects of:
"(1) a number of separate actions in a given geographic area which, if considered singly may have minor effects, but if considered together may have significant effects; or
"(2) a sequence of actions, contemplated by a single agency or individual; or
"(3) separate actions having generic or common impacts; or
"(4) an entire program plan having wide application or restricting the range of future alternative policies or projects.
*107 "(b) Generic EIS’s and their findings should set forth specific conditions or criteria under which future actions will be undertaken or approved, and shall include procedures and criteria for supplements to reflect impacts, such as site specific impacts, which have not been adequately addressed or analyzed in the generic EIS. Such procedures shall include provision for public notice for supplements which allow for public comment on the new material presented by the supplement in the same manner as was provided in respect to the generic EIS.
"(c) When a final generic EIS has been filed under this Part:
"(1) no further SEQRA compliance is required if a subsequent site specific action will be carried out in conformance with the conditions and thresholds established for such actions in the findings statement resulting from the generic EIS;
"(2) a supplemental findings statement must be prepared if the subsequent proposed action was adequately addressed in the generic EIS but was not addressed or was not adequately addressed in the findings statement for the generic EIS;
"(3) a supplement to the final generic EIS must be prepared if the subsequent proposed action was not addressed or was not adequately addressed in the generic EIS and the subsequent action involves one or more significant environmental effects; and
"(4) a negative declaration must be prepared if a subsequent proposed action was not addressed or was not adequately addressed in the generic EIS and the subsequent action will not result in any significant environmental effects.”
Although the subject zoning amendment may not be an action that authorizes a generic EIS, requiring the filing of a SEIS for a project not as yet analyzed, but yet authorized by the action of the BOE in approving the zoning change, is in harmony with the goals of SEQRA. Here the action authorizes a large number of different types of projects, including the construction of entertainment areas and hotels. Notwithstanding the assertion of respondents that they have considered the "worst case” scenarios in analyzing the conceptual residential and commercial developments discussed in the EIS, other future construction authorized in a C6-4 zone may have different adverse impacts on light, traffic, air quality and off-site displacement not considered in the EIS as filed.
Therefore, although the petition is hereby dismissed insofar as it seeks to invalidate the action of the BOE in approving *108 the zoning change, no future construction may take place on the Site that is in any way different from the four conceptual "worst case” scenarios set forth in the EIS, other than similar projects smaller in size, unless and until the agency succeeding to the powers of the BOE on this subject examines the changes between the proposed construction and that considered in the four "worst case” scenarios considered in the EIS, and after a "hard look” determines whether the changes result in possible adverse consequences that may have a significant impact on the environment, and if so, files a SEIS. In this way the environmental concerns will be examined in a manner that would be somewhat similar to that which would pertain if the owner had presented a specific plan in connection with the rezoning.
[Portions of opinion omitted for purposes of publication.]