Tokos v County of Broome (2023 NY Slip Op 06184)

Tokos v County of Broome

2023 NY Slip Op 06184

Decided on November 30, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 30, 2023

CV-22-2382
[*1]James Tokos et al., Respondents,
v
County of Broome et al., Appellants, et al., Defendant.

Calendar Date:October 13, 2023

Before:Egan Jr., J.P., Clark, Ceresia, McShan and Powers, JJ.

Robert G. Behnke, County Attorney, Binghamton, for appellants.
Levene Gouldin & Thompson, LLP, Vestal (John L. Perticone of counsel), for respondents.

Egan Jr., J.P.
Appeal from an order of the Supreme Court (Joseph A. McBride, J.), entered December 6, 2022 in Broome County, which, among other things, granted plaintiffs' motion for summary judgment declaring County of Broome Local Law No. 1 of 2022 void.
The elective legislative body of defendant County of Broome is defendant Broome County Legislature (hereinafter collectively referred to as defendants), a body comprised of 15 members who each represent one of 15 legislative districts (see Broome County Charter § C201). Every 10 years, following the release of federal census data, the County Legislature is obliged to "reconsider its representation and, if necessary, redraw legislative district boundaries" (Broome County Charter § C201 [5]). The County Legislature embarked upon that review following the release of the 2020 federal census data and, in November 2021, convened an ad hoc committee to devise a redistricting plan for the full legislature to consider. The committee set a deadline for the submission of draft redistricting maps and received five in a timely fashion. It thereafter chose to recommend the use of Map 3, which contemplated legislative boundaries that, among other things, placed portions of the Town of Maine, Broome County in three different legislative districts. The County Legislature adopted new district boundaries as defined in Map 3 via County of Broome Local Law No. 1 of 2022 (hereinafter the redistricting law), and that law took effect in March 2022.
In May 2022, plaintiffs, all of whom are county residents and registered voters, commenced this action seeking, in relevant part, a judgment declaring that the redistricting law was invalid due to its lack of compliance with Municipal Home Rule Law §§ 10 and 34 and requiring the preparation of a new map.[FN1] Following joinder of issue by defendants, plaintiffs moved for summary judgment. Defendants cross-moved for summary judgment dismissing the complaint, arguing that the action should be dismissed as barred by the doctrine of laches, the failure to name a necessary party and the statute of limitations or, alternatively, upon the merits. Supreme Court granted plaintiffs' motion and denied defendants' cross-motion, holding that that the redistricting law was invalid because it violated Municipal Home Rule Law §§ 10 (1) (a) (13) and 34 (4) (a) by forming districts with a population difference greater than five percent of the mean population of all districts and Municipal Home Rule Law § 34 (4) (e) by dividing Maine into multiple districts. Defendants appeal, and we affirm.
To begin, defendants advance a challenge to plaintiffs' standing to sue that they did not pursue in their cross-motion. Defendants did properly assert standing as an affirmative defense in their answer, however, and plaintiffs were therefore required to prove their standing in order to succeed upon their summary judgment motion (see CPLR 3211 [e]; McCormack v Maloney, 160 AD3d 1098, 1099 [3d Dept 2018], lv dismissed 32 NY3d [*2]1185 [2019]). Standing requires a party to demonstrate "first, an injury-in-fact and, second, that the injury falls within the zone of interests or concerns sought to be promoted or protected by the statutory provision" (Matter of C.K. v Tahoe, 211 AD3d 1, 9 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Ricket v Mahan, 97 AD3d 1062, 1063 [3d Dept 2012]).
In that regard, several plaintiffs averred that they were registered voters who resided in Maine and how they were harmed by the redistricting law because it divided their town among three separate legislative districts and diluted their representation in the County Legislature. This falls squarely within the zone of interests protected by Municipal Home Rule Law § 34 (4) (e), which directs, among other things, that "any plan of districting or redistricting adopted pursuant to a county charter or charter law relating to the division of any county" take into account "[t]he maintenance of . . . pre-existing political subdivisions including cities, villages, and towns." Accordingly, those plaintiffs who are residents of Maine established their standing to sue (see Wright v County of Cattaraugus, 41 AD3d 1303, 1304 [4th Dept 2007]; cf. Matter of Parietti v Day, 215 AD3d 897, 900 [2d Dept 2023], lv denied 39 NY3d 1152 [2023]), rendering academic the question of whether the other plaintiffs also have standing (see Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 813 [2003], cert denied 540 US 1017 [2003]; Matter of Town of Waterford v New York State Dept. of Envtl. Conservation, 187 AD3d 1437, 1440 [3d Dept 2020]).
Further, we do not agree with defendants that this action is time-barred. "Although declaratory judgment actions are typically governed by a six-year statute of limitations, a court must look to the underlying claim and the nature of the relief sought and determine whether such claim could have been properly made in another form" (Thrun v Cuomo, 112 AD3d 1038, 1040 [3d Dept 2013] [internal quotation marks and citations omitted], lv denied 22 NY3d 865 [2014]; see Matter of Save the Pine Bush v City of Albany, 70 NY2d 193, 202 [1987]; Solnick v Whalen, 49 NY2d 224, 229 [1980]). Defendants suggest that plaintiffs' claims here are akin to those asserted under Election Law § 16-102, but that statute governs challenges to "[t]he nomination or designation of any candidate for any public office or party position or any independent nomination, or the holding of an uncontested primary election, by reason of a petition for an opportunity to ballot having been filed, or the election of any person to any party position, or the certificate to fill a vacancy in a designation" (Election Law § 16-102 [1]). As this action involves none of those things and is instead a challenge to the legislative adoption of a redistricting map, it could not have been pursued under Election Law § 16-102, and the statute of limitations imposed by that statute does not apply (see e.[*3]g. Matter of Essenberg v Kresky, 265 AD2d 664, 666 [3d Dept 1999]). The applicable statute of limitations is, instead, the six-year one applicable to challenges to the validity of a legislative act, and this action, commenced a few months after the redistricting law was adopted and took effect, is timely (see CPLR 213 [1]; Matter of Save the Pine Bush v City of Albany, 70 NY2d at 202-203).
Turning to the merits, the redistricting guidelines imposed upon municipalities by Municipal Home Rule Law § 10 (1) (a) (13) have long been held to be inapplicable to charter counties such as the County (see League of Women Voters of Westchester v County of Westchester, 218 AD2d 730, 730-731 [2d Dept 1995], lv denied 87 NY2d 809 [1996]). The Municipal Home Rule Law was amended in 2021 to create redistricting guidelines "to cover charter counties so that statutory provisions for electoral procedures would be uniformly applied in New York State" (Assembly Mem in Support, Bill Jacket, L 2021, ch 516 at 8). The legislation did so by adding Municipal Home Rule Law § 34 (4), which states that, "[n]otwithstanding any local law to the contrary, any plan of districting or redistricting adopted pursuant to a county charter or charter law relating to the division of any county . . . into districts for the purpose of the apportionment or reapportionment of members of its local legislative body shall be subject to federal and state constitutional requirements and shall comply with" five statutory guidelines, set forth in order of priority, to the extent practicable.[FN2] The fifth guideline, as noted above, provides that "[d]istricts shall not be drawn to discourage competition or for the purpose of favoring or disfavoring incumbents or other particular candidates or political parties" and must take into consideration "[t]he maintenance of cores of existing districts, of pre-existing political subdivisions including cities, villages, and towns, and of communities of interest" (Municipal Home Rule Law § 34 [4] [e]). The fifth guideline adds that, "[t]o the extent practicable, no villages, cities or towns except those having more than [40%] of a full ratio for each district shall be divided" (Municipal Home Rule Law § 34 [4] [e]).
It is undisputed that Maine's voters were divided among three legislative districts, and plaintiffs placed that fact into context via the affidavit and report of Jonathan Krasno, a political science professor who has conducted extensive research on the issue of partisan gerrymandering.[FN3] Krasno described how the 2020 census data, regardless of whether prisoner-adjusted population numbers were used or not, reflected that the number of residents in Maine was less than 40% of the full ratio of a legislative district in the County. The entire town should have been kept in one district under the fifth guideline unless it was impractical to do so, in other words, and Krasno detailed why there was no reason to believe that such was the case. Krasno described how [*4]the ad hoc committee tasked with recommending a redistricting option to the County Legislature had before it proposed maps that would not have divided Maine, and how committee discussions offered no explanation for the division beyond the fact that the town had been similarly divided between three districts during the 2010 redistricting cycle. Krasno pointed out that the earlier division predated the fifth guideline's direction to avoid that outcome, however, as well as that there was no longstanding tradition of such a division given that Maine had either been placed in one district or divided between two districts prior to 2011. Krasno further observed that the nine other smaller towns in the County whose division would run afoul of the fifth guideline were not divided in either the 2010 or 2020 cycles of redistricting. Indeed, he set forth evidence suggesting that the true motivation for the division of Maine was an improper political one, citing data showing that the division shifted the bulk of Maine's "heavily Republican" electorate into two "marginal" districts nearby, making each more "hospitable for the members of the majority party [in the County Legislature] who hold [those] seats."
Assuming, without deciding, that plaintiffs did not meet their initial burden of showing their entitlement to summary judgment on the purported violation of Municipal Home Rule Law § 34 (4) (a), the foregoing satisfied their initial burden on the question of whether the redistricting law violated Municipal Home Rule Law § 34 (4) (e). The burden accordingly shifted to defendants to raise a material question of fact on that point but, in their motion papers, defendants made little effort to do so beyond portraying Krasno as a Democratic partisan, suggesting that Map 3 was the best choice among the maps submitted to the ad hoc committee for consideration, and vaguely asserting that continuing the division of Maine "maintain[ed] a community of interest" with a neighboring town. This fell far short of raising a material question of fact and, thus, Supreme Court properly granted plaintiffs' motion for summary judgment and directed defendants to prepare a redistricting map that complied with Municipal Home Rule Law § 34 (4).
As a final matter, we decline plaintiffs' invitation to modify the order of Supreme Court and appoint a special master to draw a new map. As plaintiffs did not appeal from that order, they are not entitled to seek affirmative relief (see Hecht v City of New York, 60 NY2d 57, 61 [1983]; Kelly's Rental v City of New York, 44 NY2d 700, 702 [1978]).
Clark, Ceresia, McShan and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: In their complaint, plaintiffs demanded the preparation of a new map for the 2022 elections and an injunction preventing the 2022 elections from proceeding under the map adopted by the redistricting law. They subsequently withdrew those requests and sought a declaratory judgment addressing the validity of the redistricting law.

Footnote 2: The legislation also amended the existing guidelines in Municipal Home Rule Law § 10 (1) (a) (13) to "mirror" those imposed upon charter counties by Municipal Home Rule Law § 34 (4) (see L 2021, ch 516, § 2; Assembly Mem in Support, Bill Jacket, L 2021, ch 516 at 8).

Footnote 3: Defendants complain that Krasno opined on legal issues, and we agree that Krasno did impermissibly offer legal conclusions at points in his report (see e.g. Schulz v Cuomo, 133 AD3d 945, 948 [3d Dept 2015], appeal dismissed 26 NY3d 1139 [2016], lv denied 27 NY3d 907 [2016]). Nevertheless, the bulk of his report was properly focused on the data and analysis that led him to conclude that defendants had not complied with Municipal Home Rule Law § 34 (4).