In the Matter of ROBERT B. WING et al., Appellants, v JAMES J. COYNE et al., Respondents.

Third Department, July 2, 1987

APPEARANCES OF COUNSEL

*Rosemary Nichols* for appellants.

*William J. Conboy, II, County Attorney (Susan M. Kushner* of counsel), for James J. Coyne and others, respondents.

## OPINION OF THE COURT

WEISS, J.

The instant proceeding concerns the planning, development, funding and proposed construction of the multipurpose Albany County Civic Center (hereinafter the civic center) located on an 8.1-acre site in the City of Albany. Petitioners[1] essentially challenge the underlying proceedings and environmental findings prepared for the civic center project pursuant to the State Environmental Quality Review Act (ECL 8-0101 *et seq.;* hereinafter SEQRA).

A chronology of events is in order. The SEQRA proceedings effectively began in October 1984 with the issuance of an interim environmental report prepared on behalf of the Albany County Industrial Development Agency (hereinafter ACIDA) the designated lead agency for the project *(see,* 6 NYCRR 617.6 [d]).[2] After copies of this report were distributed to the involved agencies and made available to the general public, several public informational meetings were held. In January 1985, a draft environmental impact statement (DEIS) was filed with the various involved agencies *(see,* 6 NYCRR 617.8 [b]; 617.10 [e]) and made available to the public. In April 1985, a public hearing was held to entertain comment on the

---

1. Petitioners sue in their capacity as residents and owners of property in the downtown Albany area and no question as to standing has been raised *(see, Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay,* 88 AD2d 484; *see also, Matter of Sun-Brite Car Wash v Board of Zoning & Appeals,* 69 NY2d 406, 412-416).

2. We note that petitioners contest ACIDA's designation as lead agency. We further observe that the Department of Environmental Conservation has recently promulgated new regulations under SEQRA, which apply to actions for which a determination of significance is not made prior to June 1, 1987 (6 NYCRR part 617). The existing regulations obtain here.

DEIS.[3] Thereafter, ACIDA prepared, filed and circulated the final environmental impact statement (hereinafter FEIS) (see, 6 NYCRR 617.8 [e]; 617.10 [h]), and on June 5, 1985 a SEQRA "findings statement" (hereinafter SFS) was issued (see, 6 NYCRR 617.9). The SFS adopted the findings and conclusions set forth in the FEIS, and effectively determined that SEQRA's procedural[4] and substantive requirements had been satisfied and the project's adverse environmental impacts minimized to the maximum extent possible. In July 1985, a notice of completion of the FEIS was published in the Environmental Notice Bulletin (6 NYCRR 617.10 [g]).

Thereafter, on September 9, 1985, respondent Albany County Legislature enacted Resolution No. 222 for 1985, accepting and adopting the environmental findings, conclusions and recommendations set forth in the FEIS and SFS. Following the adoption of this resolution, Albany County commenced land acquisition negotiations and, inter alia, retained an engineering firm to perform soil testing borings at the site prefatory to actual construction. On February 10, 1986, the Albany County Legislature adopted five resolutions authorizing agreements to retain a construction manager, architect, bond counsel, financial advisor and operations manager. In so doing, respondents represent that Albany County committed an expenditure of more than $4,500,000 on the project. In March 1986, a study completed by Stephen B. Jacobs and Associates, P. C. (hereinafter the Jacobs study) at the behest of respondent New York Urban Development Corporation (hereinafter UDC), recommended a design modification in order to preserve several historic buildings situated on the project site. Finding the proposal too costly, UDC voted not to condition its share of the project funding on the implementation of the proposal.[5] On April 29, 1986, the Albany County

---

3. In April 1985, the State Legislature, in appropriating money for the construction of the civic center, mandated that the funding of the project be undertaken directly by Albany County and not through industrial revenue bonds to be issued by ACIDA. The State Legislature also mandated that Albany County undertake the development of the civic center (L 1985, ch 41, § 15). As a result of this change in financing, a supplement to the DEIS was prepared in July 1985 which concluded that the change in financing would result in no environmental impacts not previously contemplated.

4. We note that the July 1985 DEIS supplement rescinded this finding of full procedural compliance with SEQRA, but only with respect to the change in the project's financing structure.

5. UDC is authorized to provide $6,500,000 to the project (L 1985, ch 41, § 11), which has a projected cost of $41,500,000 (Resolution No. 119).

Legislature adopted Bond Resolution No. 119 for 1986, authorizing the sale of $35,000,000 worth of general obligation bonds to finance the project.

Petitioners commenced this proceeding on August 1, 1986, alleging violations of SEQRA, the Historic Preservation Act (PRHPL art 14) and Laws of 1985 (ch 41).[6] Petitioners seek a declaration nullifying respondents' actions to date and enjoining any further activity until the violations are corrected. Supreme Court granted respondents' motion to dismiss, finding the proceeding was time barred since it was not commenced within four months of the enactment of Resolution No. 222, on September 9, 1985. This appeal by petitioners ensued.

The focus of this appeal is whether Supreme Court correctly determined that petitioners' proceeding was time barred. The parties concur that a four-month period of limitations pertains to proceedings to review SEQRA determinations (see, Matter of Save the Pine Bush v City of Albany, 117 AD2d 267, 269, mod on other grounds 70 NY2d 193). However, since SEQRA determinations are often preliminary steps in a project's decision-making process, the Statute of Limitations begins to run only when that decision-making process is completed, i.e., when the determination is "final and binding" (supra; see, Matter of Town of Yorktown v New York State Dept. of Mental Hygiene, 92 AD2d 897, 898, affd 59 NY2d 999). An assessment of when a decision has been finalized becomes more difficult when, as here, an ongoing planning and approval process exists and no permit or certificate of approval are to be issued triggering the SEQRA Statute of Limitations (see, e.g., Matter of Town of Yorktown v New York State Dept. of Mental Hygiene, supra). In essence, we must analyze what the determination sought to be reviewed is and when an impact upon petitioners occurred (see, Matter of Martin v Ronan, 44 NY2d 374, 379-381).

Petitioners maintain that Resolution No. 222 could not have triggered the limitations period since the resolution was not an "action" as that term is defined in SEQRA (see, ECL 8-0105 [4]; 6 NYCRR 617.2 [b]). Petitioners contend that the SEQRA findings in Resolution No. 222 are merely a "condition precedent to some form of governmental approval" and that the

---

**6.** Petitioners apparently concede that their claim premised on a violation of Laws of 1985 (ch 41) is premature since no final agreement has been reached between Albany County and UDC relative to this enactment.

first "action" finalizing the project was the passage of Resolution No. 119 on April 29, 1986, when the Albany County Legislature authorized the sale of bonds to finance the costs of construction. We disagree. Where an agency adopts an ordinance committing itself to a definite course of future activities, such determination constitutes an "action" within the meaning of SEQRA and, concomitantly, a "final determination" for Statute of Limitations purposes *(Matter of Save the Pine Bush v City of Albany,* 70 NY2d 193, 203, *supra; see also, Matter of Tri-County Taxpayers Assn. v Town Bd.,* 79 AD2d 337, 338-339, *mod on other grounds* 55 NY2d 41). While we do not dispute the general proposition that SEQRA determinations are a condition precedent to an ultimate project determination *(see, Matter of City of Schenectady v Flacke,* 100 AD2d 349, 354-355, *lv denied* 63 NY2d 603; *Matter of Save the Pine Bush v Planning Bd.,* 83 AD2d 741, 742; *Ecology Action v Van Cort,* 99 Misc 2d 664, 669-670), we cannot agree that Resolution No. 119 represented respondents' first definitive indication to undertake this project.

An administrative determination becomes final and binding within the meaning of CPLR 217 when it has an impact upon the aggrieved petitioners *(see, Matter of Edmead v McGuire,* 67 NY2d 714, 716; *Matter of Cabrini Med. Center v Axelrod,* 107 AD2d 965, 966). The focus of petitioners' challenge is on the procedural and substantive requirements of SEQRA, not on the project's financing mechanism. The history outlined above clearly indicates that Resolution No. 222 marked the completion of the SEQRA decision-making process insofar as Albany County's commitment to the civic center project is concerned. By its terms, Resolution No. 222 effectively adopts the underlying SEQRA findings for the project. There is nothing inconclusive about the resolution, which became a matter of public knowledge immediately after its enactment *(see, Matter of Connell v Town Bd.,* 113 AD2d 359, 364, *affd* 67 NY2d 896). In effect, Resolution No. 222 was not simply a conditional SEQRA determination, but constituted a final and binding determination on the part of Albany County to undertake the project, with an immediate impact upon petitioners' interests and, thus, was an "action" within the meaning of SEQRA *(see, Matter of Save the Pine Bush v City of Albany,* 70 NY2d 193, 203, *supra).* There being no further permit or approval requirement, Resolution No. 222 was a final approval in its own right *(see, Matter of Town of Yorktown v New York State Dept. of Mental Hygiene, supra,* at 898; *Matter of State*

*of New York Northeastern Queens Nature & Historical Preserve Commn. v Flacke,* 89 AD2d 928; *see also, County of Franklin v Connelie,* 95 Misc 2d 189, 203, *revd on other grounds* 68 AD2d 1000). The subsequent implementation of a finance mechanism by passage of Resolution No. 119 has nothing to do with the adequacy of respondents' SEQRA determinations.

Nor are we persuaded by petitioners' assertion that respondents' SEQRA decision-making process was not complete until the Jacobs study was reviewed by UDC in April 1986. A review of the SFS confirms that the question of preserving the on-site historic structures was addressed and rejected, on balance, as cost prohibitive. The fact that the Jacobs study was commissioned by UDC does not render Resolution No. 222 of the Albany County Legislature any less final and binding, for while this study was pertinent to UDC's contribution of funds to the project, it is clear that the civic center project is not dependent on the final approval of UDC *(cf., Matter of Main Seneca Corp. v Erie County Indus. Dev. Agency,* 125 AD2d 930).

In conclusion, the statutory limitations period began to run on September 9, 1985, and, since this proceeding was not commenced until August 1, 1986, it was correctly dismissed by Supreme Court as untimely. Having so concluded, we need not consider any further contentions.

MAHONEY, P. J., KANE, YESAWICH, JR., and LEVINE, JJ., concur.

Judgment affirmed, with costs.