In the Matter of DAVID DREVES et al., Appellants-Respondents, v NEW YORK POWER AUTHORITY et al., Respondents-Appellants.

Third Department, November 5, 1987

APPEARANCES OF COUNSEL

*Richard B. Wolf* for appellants-respondents.

*Acker & Evans, P. C.,* and *Charles M. Pratt (Gerald C. Goldstein* of counsel), for respondents-appellants.

**OPINION OF THE COURT**

YESAWICH, JR., J.

Petitioners reside in the Town of Pierrepont in St. Lawrence County, approximately 1,000 feet from a site, denominated Wilson Corners, upon which respondent New York Power Authority (hereinafter NYPA) plans to operate a 218-foot microwave repeater tower as part of a communications system. NYPA's Board of Trustees (hereinafter the Board) initially authorized funding for the microwave communications system in 1975. By 1977, a contract had been entered into and work had begun, only to be suspended a year later. In February 1984, the Board revived the project; it passed a resolution approving additional funding and authorizing renegotiation of the contract.

John W. Blake, Director of NYPA's Environmental Division, thereupon conducted an environmental assessment and, upon finding no significant environmental impacts, issued a negative declaration which was published in January 1985. The Board authorized acquisition of the Wilson Corners tower site in February 1985, purchased it in July 1985, and the following October passed a resolution increasing its financial commitment to the project by some $1.6 million.

In February 1986, petitioners commenced this proceeding seeking mixed CPLR article 78, declaratory and injunctive relief. Respondents moved to dismiss the petition, in part, on Statute of Limitations grounds. Petitioners amended their petition and moved for a preliminary injunction seeking to halt construction on the Wilson Corners site. Supreme Court denied petitioners' motion and partially granted respondents' motion to dismiss seven causes of action asserted in the petition as being time barred and held that the remaining two

causes of action sought declaratory relief and therefore were timely. Each side appeals. We affirm.

The seven causes of action dismissed by Supreme Court all assert violations by respondents of the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]). Petitioners make a number of arguments in an effort to avoid the four-month Statute of Limitations that generally applies to violations of SEQRA (see, e.g., Matter of Wing v Coyne, 129 AD2d 213, 216; see generally, Weinberg, Practice Commentary, McKinney's Cons Laws of NY, Book 17½, ECL C8-0109:6, at 79).

■ First, petitioners argue, citing principally Matter of Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay (88 AD2d 484) and Matter of Save the Pine Bush v Planning Bd. (96 AD2d 986, appeal dismissed, lv denied 61 NY2d 668), that the negative declaration is a nullity because it was issued by Blake instead of the Board. Glen Head and Save the Pine Bush make it clear that a lead agency may not entrust compliance with SEQRA obligations to one outside the decision-making entity (see, Matter of Save the Pine Bush v Planning Bd., supra, at 988). SEQRA does not, however, prohibit delegation of environmental review to experts within the lead agency, and, indeed, it would be irrational to do so in a case such as this where it is highly likely that the Board lacks the time and know-how required to conduct an environmental assessment on each of its projects. The decision to issue a negative declaration in this instance was made by Blake, who was Director of NYPA's Environmental Division, an expert in the field and one responsible to the Board; his decision issued on behalf of NYPA and in its name, and for which NYPA is responsible, satisfied both the letter and intent of SEQRA.

Petitioners' second argument rests on NYPA's failure to comply with the timing requirements of SEQRA. Petitioners maintain that because the project was funded and authorized in February 1984, nine months before the negative declaration was issued, the decision-making process mandated by SEQRA was not complied with and hence, the February 1984 action was illegal and the negative declaration a nullity.

■ NYPA did indeed violate SEQRA by its 1984 reapproval and funding of a type I action without first conducting an environmental analysis. However, that infraction was cured

by subsequent compliance.[1] Had petitioners challenged respondents prior to issuance of the negative declaration, the remedy would have been to require respondents to conduct a procedurally and substantively satisfactory environmental review. That has been done in this instance, albeit belatedly.

Once respondents had published the negative determination in January 1985, petitioners were limited to the four-month Statute of Limitations period for challenging SEQRA violations. Normally, the statute does not begin to run until the agency has taken action upon a negative declaration because no one has been aggrieved until then *(see, Matter of Town of Yorktown v New York State Dept. of Mental Hygiene*, 92 AD2d 897, 898, *affd* 59 NY2d 999). Here, petitioners were first aggrieved in February 1984 when NYPA took action on the project, and continued to be aggrieved until the negative declaration was finally published. At that point the determination became final and binding and petitioners had four months remaining within which to assail the sufficiency of the declaration or the prior SEQRA violation *(see, Matter of Wing v Coyne*, 129 AD2d 213, 216, *supra).*[2]

■ Finally, petitioners maintain that the resolution passed by the Board in October 1985, significantly augmenting the funds made available for the project and increasing the number of channels, constitutes a new action and, thus, requires a supplemental environmental review. We are unpersuaded. Spending more money does not, by itself, have an environmental impact. More importantly, NYPA's assertion made by its supervisory communications engineer that the larger number of channels will not change the electromagnetic field created and, therefore, will not change the environmental impact is uncontroverted in the record.

■ Respondents appeal Supreme Court's refusal to also dismiss, for untimeliness, petitioners' eighth and ninth causes of action which allege that (1) the microwave tower at Wilson

---

1. This case is unlike *Chinese Staff & Workers Assn. v City of New York* (68 NY2d 359, 368-369) and *Matter of Tri-County Taxpayers Assn. v Town Bd.* (55 NY2d 41, 43), where agency attempts to cure noncompliance with SEQRA requirements followed a timely and successful challenge to a flawed or nonexistent environmental review. NYPA corrected its violation much before petitioners' challenge.

2. Even if the Statute of Limitations were measured from the earliest action taken by the Board after publication of the negative declaration, whether it be the acquisition of the site in February 1985 or its purchase in July 1985, the fact remains that petitioners' proceeding, commenced in February 1986, would still be time barred.

Corners would violate Pierrepont's zoning and land use ordinances, and (2) NYPA exceeded its statutory mandate (Public Authorities Law § 1005) by proposing to construct and operate a microwave communications system. Because the conduct which would "give rise to a right to remedial or coercive relief", here construction and operation of the tower, had not yet occurred when petitioners brought their lawsuit, Supreme Court properly characterized these causes of action as declaratory and not governed by the four-month Statute of Limitations *(see, Solnick v Whalen,* 49 NY2d 224, 230). Even if petitioners' underlying cause of action based on Public Authorities Law § 1005 first arose when the Board sanctioned the communications system, the action is still timely, calling as it does for the construction of a statute rather than review of a particular agency determination or procedure *(see,* 3 Weinstein-Korn-Miller, NY Civ Prac ¶ 3001.06g; *see also, Atwell v Power Auth.,* 67 AD2d 365, 371, *lv denied sub nom. Matter of Power Auth. v Public Serv. Commn.,* 48 NY2d 610, *sub nom. Matter of Upset, Inc. v Public Serv. Commn.,* 49 NY2d 703, 797).

■ Lastly, we find that Supreme Court did not abuse its discretion when it denied petitioners the injunctive relief they sought. The need for a preliminary injunction was predicated on claimed SEQRA breaches, which are time barred; there is, therefore, no likelihood of success. Beyond that it is undisputed that the tower is removable.

CASEY, J. P., WEISS, MIKOLL and HARVEY, JJ., concur.

Judgment affirmed, without costs.