**COMMUNITY HOUSING OPPORTUNITIES, INC., Giovanni Mack, Sr., Giovanni Mack, Jr., Audrey Mack, Jack Bonaduci, Judith Bonaduci and William Smith, Plaintiffs,**

v.

**H.E.L.P., INC., County of Suffolk, Town of Brookhaven and New York State Housing Finance Agency, Defendants.**

**No. CV 90–1500.**

United States District Court,
E.D. New York.

Oct. 9, 1990.

---

David R. Jampol, Hauppauge, N.Y., for plaintiffs.

Twomey, Latham, Shea & Kelley, Riverhead, N.Y., for defendant H.E.L.P.

E. Thomas Boyle, Suffolk County Atty. by Charles E. Kelley, Hauppauge, N.Y., for defendant County of Suffolk.

David P. Fishbein, Brookhaven Town Atty., Medford, N.Y., for defendant Town of Brookhaven.

Robert Abrams, New York State Atty. Gen. by Ralph Bavaro, Hauppauge, N.Y., for defendant NYS Housing Finance Agency.

WEXLER, District Judge.

Plaintiffs Community Housing Opportunities, Inc. ("CHO") and various individuals bring this action against H.E.L.P., Inc. ("H.E.L.P."), the County of Suffolk ("the County"), the Town of Brookhaven ("the Town"), and the New York State Housing Finance Agency ("the HFA") for declaratory and injunctive relief for violations of Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601–3631 (Fair Housing Act), and 42 U.S.C. § 1982, and for violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution under 42 U.S.C. § 1983, resulting from defendants' financing and construction of a seventy-five unit transitional housing project for low income individuals in Suffolk County on County-owned land in North Bellport, New York, within the Town of Brookhaven ("the Project"). Upon commencing this action, plaintiffs sought a preliminary injunction to enjoin construction of the Project. At a hearing before the Court on May 18, 1990, plaintiffs' request was denied for failure to demonstrate irreparable harm sufficient to warrant preliminary injunctive relief. Presently before the Court are defendants' various motions. After briefly detailing the background of this action, the Court will address the motions.

## I. BACKGROUND

The facts as alleged in the complaint and as adduced from the record can be summarized briefly as follows. CHO is a New York not-for-profit corporation which purportedly promotes housing for low income persons and fair housing within Suffolk County. The individual plaintiffs are (1) a family residing in Suffolk County who are dependent upon social services assistance and are living at a shelter; (2) a white couple who reside in North Bellport near the Project; and (3) a black man who resides in North Bellport near the Project.

Plaintiffs allege that the Town of Brookhaven is zoned predominantly for single family dwellings. According to plaintiffs, as a result of zoning patterns and certain economic factors, demographics show that the Town is a virtually all white middle class area with small pockets of lower income areas containing disproportionately high numbers of blacks, hispanics and other racial minorities. The 1980 census purportedly shows that sixty-nine of the eighty-seven census tracts in the Town are virtually all white. Further, over 50% of the Town's black population is within two areas: North Bellport and Gordon Heights; and, North Bellport is over 50% minority. Yet, according to papers supporting plaintiffs' motion for a preliminary injunction, blacks and hispanics account for less than 4% and 5% of the Town's population, respectively. These papers also indicate that, according to the 1980 census, blacks and hispanics comprise less than 6% and 5% of the total population of the County, respectively, while 10% of the census tracts account for approximately 60% and 40% of the black and hispanic populations, respectively. The North Bellport and Gordon Heights areas also purportedly have disproportionately lower per capita incomes and higher crime rates than their surrounding predominantly white areas.

Defendant H.E.L.P. is a New York not-for-profit corporation which allegedly builds and manages transitional housing projects and programs, and, in connection thereto, provides such services as counseling, job assistance, and drug and alcohol treatment. In or about June 1989, H.E.L.P., the County, and the Town agreed to develop and construct the Project on 27.2 acres of undeveloped County-owned land in North Bellport. The Project is allegedly the first and only of its kind undertaken, endorsed or supported by the County or the Town, and, at least in Suffolk County, by H.E.L.P. Under the defendants' agreement, the Project will house homeless, low income persons who are clients of the Suffolk County Department of Social Services. Of these persons, 70% are black, hispanic or of other racial minorities. Plaintiffs indicate that the Project is only expected to function as a transitional housing center for fifteen years, at which time it will be turned over to the Town. Financing for the Project had been arranged through the HFA, which issued tax-exempt bonds following a review of the application for financing. In turn, the HFA holds a mortgage on the premises.

In addition to providing financing, the HFA was designated lead agency by the other defendant agencies and thereupon became responsible for conducting an environmental review of the Project as required under New York law. *See* N.Y. Envtl.Conserv.Law § 8–0109(2), (4) (McKinney 1984). Article 8 of the Environmental Conservation Law is the State Environmental Quality Review Act, commonly dubbed "SEQRA." SEQRA requires state and municipal agencies when considering proposed activities to prepare environmental impact statements (EIS), which must include a detailed statement setting forth, *inter alia,* the short-term and long-term effects on the environment of the proposed action, alternatives to the proposed action and measures to mitigate harm to the environment. *See id.* § 8–0109(2). In accordance with the requirements of SEQRA, on May 8, 1989, the HFA issued a State Environmental Quality Review Negative Declaration ("SEQR Negative Declaration"), which reflected the HFA's determination that the proposed action, *i.e.,* the Project, would not have a significant adverse effect on the environment, and that therefore a draft EIS would not be prepared. *See id.* (EIS required for any proposed action "which may have a significant effect on the environment"). The HFA's review included a public hearing on February 7, 1989, which followed a public comment period. In its memorandum in support of its motion to dismiss, the HFA states that the "HFA's review process culminated in June 1989 with the agency's formal adoption of the resolutions required to finance the Project. Following approval of the application, HFA issued tax exempt bonds, the proceeds of which were used to finance construction of the Project." Memorandum of Law of New York State Housing Finance Agency

in Support of Its Motion to Dismiss, at 3 (hereinafter HFA's Memo of Law). In September 1989, the HFA issued $5.58 million in bonds for the Project. As of the May 18, 1990 preliminary injunction hearing, the HFA maintained that construction of the Project was approximately 50% complete and approximately $1.8 million in funding had been distributed.

Plaintiffs contend that selection of the North Bellport site for the Project

> will have the natural and reasonable result of furthering the racial imbalance within the County of Suffolk and the Town of Brookhaven, add to already disproportionate imbalance of racial and ethnic minorities within the County of Suffolk and Town of Brookhaven, further "ghettoize" the area of North Bellport, increase the strain on public services, schools, crime prevention and other services within the impacted area of North Bellport, and further lower the median income of the impacted area of North Bellport resulting in greater governmental needs with a lower property tax base.

Complaint para. 20.

Plaintiffs maintain that the County, the Town and H.E.L.P. violated the Fair Housing Act, 42 U.S.C. § 3601–3631, by selecting North Bellport as the site for the Project, and that these defendants violated the civil rights of the proposed residents of the Project and existing residents of North Bellport by discriminating against them on the basis of race contrary to 42 U.S.C. § 1982 and the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution as enforced under 42 U.S.C. § 1983. Based on the Court's pendent jurisdiction, plaintiffs also claim that defendants violated SEQRA. In this respect, they claim that the review of the Project by the HFA, acting as lead agency for the participating agencies, did not comply with SEQRA because the HFA failed to adequately consider the impact of the Project on local schools, and failed to consider various other factors including, *inter alia,* existing patterns of population concentration, population distribution, existing community

or neighborhood character, and the long range status of the Project and its effect on the neighborhood when it is eventually turned over to the Town after fifteen years. Moreover, plaintiffs contend that the HFA was not the appropriate agency to conduct the SEQRA review; the County and Town purportedly were more involved in the planning stages of the Project and were more familiar with the social and economic concerns and physical surroundings of the Project site.

By way of relief, for the SEQRA violation, plaintiffs request an order directing an EIS, "annulling all of the permits, agreements, contracts and other governmental actions" regarding the site, and "enjoining any further action with regard to the property in North Bellport which may be taking place pursuant to an annulled determination of a governmental body." Complaint at 9. For the remaining claims, plaintiffs request an order requiring defendants to produce for the Court all prospective sites in non-impacted areas for a transitional housing project, and to develop the transitional housing project in one of those sites rather than at the North Bellport site; or, alternatively, an order enjoining defendants from developing the Project in North Bellport. *Id.* at 8–9.

All four defendants have moved against the complaint. The motions presently before the Court are as follows: (1) the County's and H.E.L.P.'s motions to dismiss the SEQRA claim for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), and for a more definite statement as to the remaining claims under Fed.R.Civ.P. 12(e); (2) the Town's motion to dismiss the complaint for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6); and (3) the HFA's motion to dismiss the SEQRA claim for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(1) and (6).

## II. DISCUSSION

### A. *SEQRA Claim*

■ As noted above, plaintiffs contend that defendants violated SEQRA. Defen-

dants, however, argue that plaintiffs' SEQRA claim is time-barred. Though this Court may have jurisdiction under the doctrine of pendent jurisdiction to entertain plaintiffs' SEQRA claim, if the claim is time-barred it must be dismissed.

As defendants contend, the four-month statute of limitations governing article 78 proceedings under New York law is the limitations period generally applicable to judicial review of SEQRA determinations. *See, e.g., Dreves v. New York Power Auth.,* 131 A.D.2d 182, 520 N.Y.S.2d 956, 957 (3d Dep't 1987), *appeal dismissed,* 71 N.Y.2d 889, 527 N.Y.S.2d 770, 522 N.E.2d 1068 (1988); *Wing v. Coyne,* 129 A.D.2d 213, 517 N.Y.S.2d 576, 578 (3d Dep't 1987). Plaintiffs commenced this action in May 1990, more than four-months after the HFA (1) issued the SEQR Negative Declaration (May 1989); (2) formally adopted resolutions authorizing financing on the Project (June 1989); and (3) issued the $5.58 million in bonds for the Project (September 1989). Nevertheless, plaintiffs argue that their SEQRA claim is not governed by the four-month period applicable to article 78 proceedings, but rather, is governed by a six-year period because the SEQRA claim is raised by way of declaratory judgment, *see* N.Y.Civ.Prac. L. & R. § 213(1) (McKinney 1990) (six-year period applies to actions for which no limitation period is specifically prescribed by law). Plaintiffs' argument is erroneous.

As stated by the New York Court of Appeals: "In order to determine the Statute of Limitations applicable to a particular declaratory judgment action, the court must 'examine the substance of that action to identify the relationship out of which the claim arises and the relief sought.' " *Save the Pine Bush, Inc. v. City of Albany,* 70 N.Y.2d 193, 518 N.Y.S.2d 943, 946, 512 N.E.2d 526, 529 (1987) (quoting *Solnick v. Whalen,* 49 N.Y.2d 224, 425 N.Y.S.2d 68, 71, 401 N.E.2d 190, 193 (1980)). It is clear that the gist of plaintiffs' claim is that defendants failed to follow the requirements of SEQRA. *See* Complaint paras. 26–28. Consequently, because plaintiffs' SEQRA claim was maintainable in an article 78 proceeding it should have been

brought within four-months of the final and binding agency action, which, according to the record and for purposes of judicial review of the defendants' actions under SEQRA, was more than four-months before plaintiffs interposed their SEQRA claim. Accordingly, plaintiffs' SEQRA claim is time-barred and is therefore dismissed. Hence, the Court need not address defendants' challenges to the merits of the SEQRA claim.

## B. *Remaining Claims*

■ Thus, what remains for the Court to address are the County's and H.E.L.P.'s motions for a more definite statement as to the remaining claims in the complaint, and the Town's motion to dismiss these claims for failure to state a claim against it upon which relief can be granted. The Town's argument is premised on the assertion that the Town's "limited role of expressing support for the project, and its status as an interested party providing comments under SEQRA, does not constitute municipal action causing a deprivation of these plaintiffs' civil rights under 42 U.S.C. § 1983; is not actionable conduct under the Fair Housing Act; and is not a determination subject to challenge under SEQRA." Affidavit of Garrett W. Swenson, Assistant Town Attorney, para. 3. The Town goes on to detail its role in the matter, concluding that "even if the plaintiffs are able to substantiate their claim that the project will unlawfully 'ghettoize' the area in question, they will nonetheless be unable to ascribe that effect to any Town action." *Id.* para. 14. In addition, regarding the remaining claims, the HFA maintains in its papers that these claims are "apparently directed at defendants other than the HFA and, in fact, does not specify any wrongful conduct on the part of the HFA." HFA's Memo of Law at 3 (citation omitted). In response, plaintiffs assert simply that based on the HFA's responsibilities concerning the Project it is an appropriate party to these claims.

In response to the County's, H.E.L.P.'s, and the Town's motions, and the HFA's assertions, the Court directs plaintiffs to

serve and file an amended complaint within thirty days of the date of this order stating with sufficient particularity the acts of the respective defendants which constitute the alleged violations of their civil rights and the Fair Housing Act. Further, considering the nature of this Court's inquiry on a motion under Fed.R.Civ.P. 12(b)(6), and given the relatively early stage of the proceeding, the Town's motion is denied at this time without prejudice to its renewing the motion following plaintiffs' service and filing of the amended complaint.

## CONCLUSION

Based on the foregoing: (1) plaintiffs' SEQRA claim is dismissed because it is barred by the applicable statute of limitations; and (2) plaintiffs are required to serve and file an amended complaint within thirty days of the date of this order stating with sufficient particularity the acts of the respective defendants which constitute the alleged violations of their civil rights and the Fair Housing Act.

SO ORDERED.