■ In the Matter of New York State Electric & Gas Corporation, Appellant, v Commissioner of the Dutchess County Department of Public Works et al., Respondents.

[613 NYS2d 784] —Yesawich Jr., J. Appeal (transferred to this Court by order of the Appellate Division, Second Department) from a judgment of the Supreme Court (Hillery, J.), entered June 1, 1993 in Dutchess County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Dutchess County Superintendent of Highways denying petitioner's application for a highway work permit.

In January 1992, petitioner applied to respondent Dutchess County Superintendent of Highways for a permit to upgrade its facilities along County Route 81 in the Town of Amenia, Dutchess County, and specifically to replace 22 utility poles. In accordance with a policy statement filed with the County Clerk in March 1991 (hereinafter the pole policy)—declaring that all utility poles within 10 feet of the edge of the pavement on County roads were considered obstructions and mandating that utility companies owning such poles prepare and follow a plan for relocating them farther from the roadway— the Superintendent refused to issue the permit unless petitioner would agree to relocate 11 of the 22 poles involved that are currently in violation of the policy.

Petitioner thereafter brought this proceeding, in which it seeks an order annulling the Superintendent's determination, compelling him to issue the permit without requiring relocation of the poles, and declaring that respondents lacked authority to implement the pole policy. After remitting the matter to respondents for a final determination on the permit application, and reviewing that determination (which denied the application), along with respondents' answer and counterclaim, and the supporting affidavits filed by both parties, Supreme Court dismissed the petition. Petitioner appeals.

Preliminarily, we note that petitioner's challenge to the pole policy itself, insofar as it is based on the alleged failure of respondents to comply with the mandates of the State Environmental Quality Review Act (ECL art 8), is time barred for the policy, issued in March 1991 and directed at all utility companies, necessarily had an immediate impact on petitioner. This proceeding, not having been brought within four months of the policy's issuance, was therefore untimely (see, CPLR 217; *Matter of Wing v Coyne*, 129 AD2d 213, 217).

To the extent that the petition charges that respondents acted improperly by resorting to the policy to deny or condition the work permit, however, it is timely, having been brought within four months of "the particular administrative

action taken pursuant to the allegedly invalid [policy]" *(New York State Assn. of Counties v Axelrod,* 150 AD2d 845, 847, *lv dismissed* 75 NY2d 765). Nevertheless, an affirmance is dictated, for petitioner has not demonstrated that the Superintendent's action in this regard was arbitrary and capricious, without rational basis or in excess of his authority *(see, Burger King Corp. v County of Suffolk, Dept. of Public Works,* 121 AD2d 494, 495; *Token Carpentry v Hornik,* 92 AD2d 868, 870).*

The Highway Law invests a County Superintendent with authority to impose terms and conditions upon the issuance of permits for work to be performed within the County right-of-way *(see,* Highway Law § 136 [1]), as long as those conditions bear a rational connection to the purpose of that statute, which is to preserve the integrity and safety of the County road system *(Token Carpentry v Hornik, supra,* at 869). The requirement that petitioner's utility poles be set back 10 feet from the paved surface of the road is based, as is the pole policy in general, upon the recommendations of the National Association of County Engineers and the American Association of State Highway and Transportation Officials that objects should be placed as far from the traveled roadway—exclusive of shoulders—as possible, and that "a minimum clear zone width of 10 feet should be provided", as well as upon the results of studies published by those two national engineering associations indicating that 74% of all utility poles struck by vehicles were within 10 feet of the road edge and that a clear space of 10 feet provides enough room for vehicles to go off the paved portion of the road safely when confronted with an emergency.

Increased use by the traveling public of the shoulder portion of the road in recent years, and the need to use this area for snow removal and storage, clearing of grass and trees, and regrading of the road and shoulder, are also cited by the Superintendent to support his determination with regard to the permit application. These factors provide ample basis for a conclusion that utility poles within 10 feet of the road "interfere with the use of the highway for public travel" (Highway Law § 103-a), and for the implementation of a policy mandating gradual relocation of such poles, as well as for the Super-

---

* Although petitioner argues in its brief that respondents should not be permitted to condition issuance of a permit on petitioner entering into a "Memorandum of Agreement", respondents have capitulated on this point, agreeing that no memorandum need be signed if petitioner prefers to follow the general permit procedures for all work performed within the County right-of-way.

intendent's decision to condition issuance of a work permit on resetting the poles in controversy. Petitioner's contrary view notwithstanding, the mere fact that the County might not be held liable for accidents which involve poles located within several feet of the roadway does not render respondents' attempt to prevent such accidents, and thus to protect the traveling public, arbitrary or capricious.

Finally, although the pole policy does provide that a utility company may, upon a showing of good cause, be excused from compliance with respect to a specific pole, petitioner, having failed to substantiate the allegation that it is unable to secure easements from the adjacent property owners, or to document its attempts to do so, has not, as the Superintendent found, established its need for an exception with regard to the poles at issue herein.

Mikoll, J. P., Crew III, White and Peters, JJ., concur. Ordered that the judgment is affirmed, with costs.