[650 NYS2d 839]

In the Matter of VIRGIL M. PRICE II et al., Respondents, v
COUNTY OF WESTCHESTER et al., Appellants.

Third Department, November 27, 1996

APPEARANCES OF COUNSEL

*Marilyn J. Slaaten, County Attorney* of Westchester County, White Plains *(Annette Hasapidis-Marshall* of counsel), for appellants.

*Dewey Ballentine,* New York City *(Donald W. Stever* of counsel), for respondents.

## OPINION OF THE COURT

CASEY, J.

After several years of study regarding future improvement and development of the Westchester County Airport, an updated master plan was issued in 1986 and formal environmental review was undertaken to comply with both the National Environmental Policy Act (42 USC § 4321 *et seq.*) and the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]). Because the updated master plan involved some 14 major projects at the airport, a generic environmental impact statement (hereinafter GEIS) was used to comply with SEQRA.* A combined draft environmental assessment (hereinafter EA) and GEIS was issued in 1986 and a public hearing was thereafter held. In May 1987, respondent Westchester County Board of Legislators (hereinafter the Board) approved a final EA/GEIS and adopted a findings statement.

In September 1994, the Board adopted a bond act which authorized the construction of various general aviation infrastructure improvements (hereinafter the GA project) consistent with the updated master plan. The bond act also authorized certain drainage improvements. Petitioners, the owners of land abutting the airport, commenced this CPLR article 78 proceeding in October 1994 alleging respondents' failure to comply with SEQRA in connection with the GA project and drainage improvements. In their answer, respondents interposed the Statute of Limitations as a defense.

Petitioners obtained a temporary restraining order, which enjoined construction of the GA project and drainage improvements pending a final judgment in the proceeding. After a hearing, Supreme Court granted the petition, concluding that the proceeding was timely and that respondents had failed to comply with SEQRA in approving the GA project and a portion of the drainage improvements. This appeal by respondents ensued.

---

* The regulations governing the use of a GEIS were formerly contained in 6 NYCRR 617.15 and are now contained in 6 NYCRR 617.10.

■ Respondents first contend that the final EA/GEIS approved in 1987 constituted the final determination for the purposes of compliance with SEQRA and, therefore, petitioners' proceeding is untimely. In challenging respondents' compliance with SEQRA, petitioners were required to commence the proceeding within four months after respondents' determination became final and binding upon petitioners (*see*, *Citizens for Envtl. Safety v New York State Dept. of Envtl. Conservation*, 134 AD2d 935, *lv denied* 71 NY2d 803). A final determination for the purpose of compliance with SEQRA is made when an agency commits itself to a definite course of future action (*see*, *Matter of Wing v Coyne*, 129 AD2d 213, 217). According to petitioners, the final EA/GEIS contains several contingencies which establish that respondents did not commit themselves to a definite course of future action. In particular, petitioners cite to express provisions in the EA/GEIS which (1) recognize that detailed plans for the GA project "have yet to be developed" and further environmental review will occur when the detailed plans are developed, (2) recognize that the GA project "may or may not actually occur", and (3) provide that approval of the updated master plan shall not be construed as authority to proceed with any construction in the absence of prior approval by the Board.

We agree with respondents that the contingencies do not affect the finality of the EA/GEIS, which clearly commits the County to a definite course of future action with regard to each of the projects identified in the updated master plan (*see*, *Matter of Sierra Club v Power Auth.*, 203 AD2d 15, 17; *Matter of Wing v Coyne*, *supra*, at 217-218). For the most part, the contingencies are entirely consistent with the very nature of a GEIS (*see*, 6 NYCRR 617.10). Based upon our review of the record, we conclude that the statement in the EA/GEIS that the GA project "may or may not occur" is nothing more than a recognition that unforeseeable future events might obviate the need for, or preclude the County from undertaking, the GA project.

Our conclusion that the EA/GEIS approved in 1987 is a final determination does not, however, resolve the Statute of Limitations issue, for it is clear that the actual construction of the GA project was to be subjected to additional SEQRA review other than that completed by the final EA/GEIS. Thus, the EA/GEIS itself provides: "While no significant negative environmental impacts have been identified that will result from the development of the two general aviation areas consis-

tent with the airport policy, the County recognizes that a review of the detailed development plans for these facilities should be conducted under the terms of Section 617.15 of SEQR to confirm whether this determination of no impact is valid. The County will conduct such a review when detailed development proposals are presented." This provision for future review is consistent with the regulatory requirements for a GEIS now contained in 6 NYCRR 617.10 (c) and (d). To the extent that petitioners challenge respondents' determination to proceed with the actual construction of the GA project on the ground that respondents failed to adequately complete the required future review, we conclude that the proceeding is not untimely.

Upon conducting the further review of the GA project required by the EA/GEIS, respondents had four options (*see*, 6 NYCRR 617.10 [d]), including "no further [SEQRA] compliance * * * if [the GA project] will be carried out in conformance with the conditions and thresholds established for such [project] in the [GEIS] or its findings statement" (6 NYCRR 617.10 [d] [1]). Respondents contend that they adopted the no further compliance option. Absent from the record, however, are sufficient, specific factual findings to support respondents' conclusory assertion that the GA project will be carried out in conformance with the conditions and thresholds established for the project in the GEIS or its findings statements. Indeed, respondents do not refer to any specific conditions and thresholds established for the GA project in the GEIS or its findings statement. In the absence of such conditions or thresholds, the no further compliance option would be unavailable. An agency's failure to provide a sufficient statement of the factual basis for its determination precludes adequate judicial review (*see, Matter of Montauk Improvement v Proccacino*, 41 NY2d 913, 914). Accordingly, although our reasoning is somewhat different than that of Supreme Court, we agree with Supreme Court that respondents' determination to proceed with the GA project must be annulled.

Petitioners' challenge to the drainage improvements requires a different analysis. In 1991, the County was charged with violating the limits of its State Pollution Discharge Elimination System permit, which allowed the discharge of excessive amounts of ethylene glycol, a component of deicing fluid, into Rye Lake. The County entered into an order on consent with the Department of Environmental Conservation (hereinafter DEC), which required the County to formulate a plan to remedy the violation. The County proposed a plan

which would divert all airport runoff into Blind Brook through a retention basin. DEC approved the construction schedule submitted by respondents and made it a part of the consent order. Respondents thereafter submitted a supplemental and amended construction schedule to DEC, which DEC did not expressly incorporate into the consent order. In giving final approval for the drainage improvements, respondents concluded that no further SEQRA review was required because of the exemption for actions specified in a consent order (see, 6 NYCRR 617.5 [c] [29]).

Supreme Court concluded that because the amended and supplemental construction schedule submitted by respondents was never expressly incorporated in the consent order, the improvements described therein should be divided into two categories: those required to remedy the ethylene glycol contamination problem and those designed as mere storm water management facilities. Only those improvements in the former category are subject to the consent order exemption, according to Supreme Court's analysis. We agree with that analysis, but we disagree with Supreme Court's conclusion regarding respondents' lack of compliance with SEQRA as to those improvements in the storm water management category.

Storm water management was expressly considered in the 1987 EA/GEIS. In considering water quality, the EA/GEIS recognized that "drainage techniques would be included in the design of all facilities to divert to Blind Brook the majority of surface runoff". The EA/GEIS also took into account that for storm water management purposes, a water retention basin would be built to intercept the flow of Blind Brook. The flora and fauna of Blind Brook were considered, as was the effect of the retention basin on wetlands and floodplains. The effects of construction were also considered. The EA/GEIS is, as we concluded previously, a final determination and, therefore, petitioners are barred by the Statute of Limitations defense asserted in respondents' answer from claiming that the SEQRA review concluded in the EA/GEIS is inadequate. In contrast to the GA project, there is no provision in the EA/GEIS for further SEQRA review of specific drainage improvements. The drainage improvements categorized as storm water management by Supreme Court consist of drainage improvements necessary to divert airport runoff into Blind Brook, including an expanded retention basin. The improvements fall squarely within the activities specifically addressed in the EA/GEIS. We conclude, therefore, that Supreme Court erred in conclud-

ing that respondents failed to comply with SEQRA in regard to the storm water management drainage improvements.

■■ Based upon the foregoing analysis, respondents' determination to proceed with the drainage improvements should not be disturbed, but respondents' determination with regard to the GA project must be annulled, and the matter must be remitted to respondents for the limited purpose of conducting the review of the specific plans for the GA project required by the EA/GEIS. Upon completion of that review, respondents must adopt one of the four available options (*see,* 6 NYCRR 617.10 [d]) and provide the specific detailed findings necessary to support that option. We believe that no injunctive relief is necessary. Respondents may proceed with drainage improvements authorized by the bond act, but must complete the required review of the GA project before proceeding with that project.

MIKOLL, J. P., YESAWICH JR., SPAIN and CARPINELLO, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by deleting decretal paragraph 1 and substituting therefor a provision which annuls Westchester County (Bond) Act No. 135-1994 insofar as it authorizes construction of general aviation infrastructure improvements to the Westchester County Airport, and by deleting decretal paragraph 2 and substituting therefor a provision which remits the matter to respondents for further proceedings not inconsistent with this Court's decision, and, as so modified, affirmed.