4

[664 NYS2d 137]

In the Matter of CATSKILL CENTER FOR CONSERVATION AND DEVELOPMENT, INC., et al., Appellants, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents, and SHANTY HOLLOW CORPORATION, Appellant.

Third Department, October 23, 1997

## APPEARANCES OF COUNSEL

*Morgan, Lewis & Bockius,* New York City *(John Linsenmeyer* of counsel), for Catskill Center for Conservation and Development, Inc. and others, appellants.

*Le Boeuf, Lamb, Greene & MacRae, L. L. P.,* Albany *(Thomas S. West* and *Cindy M. Monaco* of counsel), for Shanty Hollow Corporation, appellant.

*Dennis C. Vacco, Attorney-General,* Albany *(Kathleen Liston Morrison* of counsel), for respondents.

## OPINION OF THE COURT

MERCURE, J.

Respondent Shanty Hollow Corporation is the operator of Hunter Mountain, a major ski area located in Greene County. Since approximately 1960, Shanty Hollow has utilized Dolan's Lake, an artificial reservoir resulting from the diversion of waters from Schoharie Creek (hereinafter the creek), as a source of water for its snowmaking activities. In 1980, respondent Department of Environmental Conservation (hereinafter DEC) granted Shanty Hollow permission to expand the diversion channel into the creek. The July 22, 1980 modified permit issued pursuant to ECL article 15 authorized the construction of a rip rap wing wall extension of the existing diversion weir but imposed a number of conditions. Condition 19 required the installation of a culvert box structure with boards situated such as to prevent the diversion of water into Dolan's Lake when flows in Schoharie Creek were 10 cubic feet per second

(hereinafter cfs) or less and to allow a maximum diversion of 2 cfs when creek flows were between 10.1 and 25 cfs and of 4 cfs when flows were from 25.1 to 40 cfs. Condition 20 provided that future work, including construction of a concrete wing wall and maintenance to the diversion channel, would require notification to and review and approval by DEC.

In 1990, DEC commenced an enforcement proceeding against Shanty Hollow accusing it of, among other things, diverting water and performing construction on the creek in violation of the ECL and the terms of the 1980 permit. Following five days of evidentiary hearings conducted in September 1990 and October 1990, the parties resolved the matter through negotiation and entered into a consent order. On July 14, 1993, respondent Commissioner of Environmental Conservation issued a statement of findings and executed the consent order, which is the primary focus of this proceeding.

The consent order assessed a $25,000 civil penalty against Shanty Hollow and required its acknowledgment of DEC's present and future jurisdiction, *inter alia*, to impose limitations on the rate, timing and amount of water withdrawal for snowmaking purposes. It also imposed interim ameliorative measures, including the requirement that Shanty Hollow immediately construct a water impoundment for the purpose of minimizing water withdrawals during low flow conditions and the following temporary water withdrawal restrictions. Pending full operation of the storage impoundment, from October 15 to April 15 petitioner was permitted for a total period of 240 hours to cause water to flow in the creek at less than 11 cfs, but in no event less than 5 cfs and subject to the condition that water withdrawals resulting in stream flows below 11 cfs could not extend beyond a period of 66 hours in duration without a minimum of 8 hours of curtailment to water withdrawals to the 11 cfs standard. Following full operation of the storage impoundment (which took place on or before October 21, 1993), the period of 240 hours was to be reduced to 192 hours and the curtailment period was to be increased from 8 hours to 16 hours.

Finally, the consent order provided for extensive future analysis, review and consideration of the project, including a biological assessment of the creek's salmonids (i.e., trout) to determine the adverse impacts, if any, of past withdrawals of water for snowmaking purposes and the extent to which direct and external mitigation measures could be utilized to eliminate or offset any impacts that may be found to exist. In order

to reduce Shanty Hollow's use of water from the creek, it was required to submit an approvable "Best Management Practices Plan" on or before September 30, 1992, to consider the general practices of the ski industry and include plans to maximize the use of impounded water during low flow conditions and to develop conservation methods, including employee training, inspections, record keeping, data collection and equipment maintenance. The consent order also mandated review of the project under the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]), including the preparation and filing of a draft environmental impact statement on or before July 1, 1995 addressing (1) hydrologic issues associated with water flows and water uses of snowmaking, (2) any significant adverse environmental impacts resulting from water withdrawals associated with snowmaking, (3) reasonable alternatives, (4) mitigation measures, and (5) in furtherance of the balancing process contemplated by ECL 3-0301 (1) (b) and ECL articles 8 and 15, the socioeconomic benefit of the project, based on a consideration of Hunter Mountain's recreational, social and economic value to the State, regional and local economies and the welfare of the people of the State.

Petitioners timely commenced this CPLR article 78 proceeding challenging the Commissioner's decision to enter into the consent order. In the petition, petitioners alleged, *inter alia*, that the consent order was not supported by evidence adduced at the evidentiary hearing and, as such, was arbitrary and capricious and violated the ECL and SEQRA by failing to require Shanty Hollow to prepare an environmental impact statement before diverting water from the creek and constructing a water storage impoundment. Shanty Hollow intervened in the proceeding and in its answer sought dismissal of the petition and cross-claimed for a declaratory judgment that DEC lacked jurisdiction to regulate its withdrawals of water from the creek and that condition 19 of the 1980 permit was illegal and the consent order void. Following the filing of all pleadings and exhibits, Supreme Court dismissed the petition and Shanty Hollow's cross claim. Petitioners and Shanty Hollow now appeal.

We affirm. Initially, we are not persuaded by petitioners' claim that the Commissioner's determination establishing the interim withdrawal limits embodied in the consent order was arbitrary and capricious as unsupported by evidence adduced at the hearings conducted on the 1990 enforcement proceeding. We note at the outset that our scope of review in a proceeding

such as this is very limited. Because of the applicability of the arbitrary and capricious standard, our sole inquiry is whether the Commissioner's determination has a rational basis (see, *Flacke v Onondaga Landfill Sys.*, 69 NY2d 355, 363). In addition, where, as in this case, "the judgment of the agency involves factual evaluations in the area of the agency's expertise and is supported by the record, such judgment must be accorded great weight and judicial deference" (*id.*, at 363).

Although we agree that there is no record evidence specifically supporting so much of the consent order as authorized temporary and temporally-limited withdrawals of water such as would bring creek flows below 10 cfs, we conclude that petitioners have erred in their analysis by improperly segmenting the broad range of issues covered by the consent order and directing their attack at but one of several distinct but interrelated components. The simple fact is that the controlling statutory and regulatory scheme will countenance a reasonable diminution in fish populations in favor of competing recreational and commercial interests. In that connection, we note that ECL 15-0105 charges the Commissioner with conserving and controlling the State's water resources, including the creek, "for the benefit of all inhabitants of the [S]tate". That responsibility includes insuring adequate and suitable water not only for the maintenance of fish and wildlife but also for commercial uses and recreational enjoyment (ECL 15-0103 [3]). Consistent therewith, the Commissioner's statement of findings explicitly recites that "the potential for adverse impacts to occur during the interim period, while not acceptable is not excessive in light of historical meteorological projections, the interim mitigation measures and long range plans", and the consent order and its various provisions expressly recognized the need to engage in an appropriate "balancing process". In view of the record evidence establishing an economic justification for Shanty Hollow's water withdrawals, the fact that the challenged flow restrictions were only temporary pending full environmental review, and the other concessions given by Shanty Hollow, including payment of the civil penalty and the abandonment of its jurisdictional objection, we conclude that there was a rational basis for the consent order considered as a whole.

Turning briefly to petitioners' remaining contentions, we conclude first that petitioners' challenge to the construction and operation of the storage impoundment is moot because of petitioners' failure to seek injunctive relief prior to the comple-

tion and the commencement of operation thereof (*see, Matter of Many v Village of Sharon Springs Bd. of Trustees*, 234 AD2d 643, 644, *lv denied* 89 NY2d 811; *Matter of Save the Pine Bush v City Engr. of City of Albany*, 220 AD2d 871, *lv denied* 87 NY2d 807; *cf., Matter of Watch Hill Homeowners Assn. v Town Bd.*, 226 AD2d 1031, *lv denied* 88 NY2d 811). In any event, as an ameliorative measure required by the Commissioner in settlement of the enforcement proceedings against Shanty Hollow, the project was not subject to SEQRA review (*see*, 6 NYCRR 617.5 [c] [29]; *Matter of Price v County of Westchester*, 225 AD2d 217, 222; *Matter of Town of Queensbury v City of Glens Falls*, 217 AD2d 789, 790) and the consent order specifically classified the project as an exempt action pursuant to ECL 8-0105 (5) (i).

Finally, we perceive no merit to Shanty Hollow's claim that it should be relieved of its submission to DEC jurisdiction over its withdrawals of water from the creek. Notably, we are wholly unpersuaded that the provision of the consent order that "if at any time [DEC] or any person shall assert the applicability of the 1980 permit * * * as a basis for relief, [Shanty Hollow] fully reserves its right to challenge the 1980 permit and the authority and jurisdiction of [DEC] to regulate * * * commercial water withdrawals for snowmaking purposes" was triggered or even implicated by petitioners' instant challenge. The parties' remaining contentions are either academic in view of our determination or have been considered and found to be unavailing.

CARDONA, P. J., WHITE, PETERS and CARPINELLO, JJ., concur.

Ordered that the judgment is affirmed, without costs.