[707 NYS2d 521]

In the Matter of EASTERN TRANSFER OF NEW YORK, INC., Appellant, v JOHN P. CAHILL, as Commissioner of Environmental Conservation, et al., Respondents. (And Another Related Action.)

Third Department, May 4, 2000

APPEARANCES OF COUNSEL

*LeBoeuf, Lamb, Greene & MacRae, L. L. P.,* Albany (*Thomas S. West* of counsel), for appellant.

*Eliot Spitzer, Attorney General,* Albany (*Maureen F. Leary* of counsel), for respondents.

**OPINION OF THE COURT**

GRAFFEO, J.

This controversy emanates from the parties' differing interpretations of an administrative enforcement order issued on consent (hereinafter the consent order) by respondent Department of Environmental Conservation (hereinafter DEC) in June 1990 relating to the operation of a solid waste transfer station in Kings County which is now owned by petitioner. Because we hold that the consent order, which expired on May 7, 1998, neither granted petitioner "vested rights" in the continued operation of the transfer station nor authorized the construction of a new putrescible waste processing facility on the site in the absence of compliance with permit and environmental review requirements, we affirm Supreme Court's judgment.

The consent order was issued following resolution of two administrative enforcement actions brought against New York Carting Company, Inc. (hereinafter NY Carting), the initial owner of the transfer station. DEC had commenced an enforcement proceeding due, in part, to the operation of the transfer station without a permit in violation of ECL 27-0707 (1) and 6 NYCRR part 360. Under the terms of the consent order, NY Carting received temporary authorization to continue its operations for a period of 120 days and was required to submit a permit application within 90 days. Paragraph IV of the consent order stated, in pertinent part, as follows: "This Order is not a permit. This Order constitutes temporary authorization for

[NY] Carting to operate its facility to handle putrescible material and construction and demolition ('C&D') debris for a period of one hundred and twenty (120) days from the effective date of the Order. This temporary authority to operate shall expire automatically at the end of this 120-day period unless DEC agrees in writing to renew it." Moreover, the consent order provided that if the transfer station was sold, the purchaser would be obligated to comply with its terms.

A "compliance schedule" incorporated in the consent order established limitations on the nature and amount of waste to be handled by the transfer station and set forth specific criteria for waste processing. The schedule further directed NY Carting to erect a fence 10 feet in height within 30 days to segregate putrescible materials from construction and demolition debris. Otherwise, activities authorized under the consent order were "limited to the receipt, unloading, sorting, materials recovery, compaction, temporary storage, and trans-shipment of putrescible material and C&D debris."

In September 1990, NY Carting submitted a permit application which sought authority for continued operation of the transfer station and permission for construction of a new putrescible waste processing facility at the site. Shortly thereafter in 1991, ownership of the transfer station passed to Clean Venture. As the new owner, Clean Venture requested to be substituted as operator of the transfer station for purposes of the consent order, agreeing to be bound by its terms. DEC consented to the substitution.

Between 1992 and 1995, Clean Venture prepared a revised permit application while continuing to operate under the terms of the consent order, which was extended upon letter request every 120 days. In September 1995, DEC determined that Clean Venture's permit application was complete, including its request seeking authority to construct a new 26,000 square-foot putrescible waste processing facility. DEC began its review of the application under applicable permit regulations (see, 6 NYCRR part 360) and the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]; see, 6 NYCRR part 617). After finding that construction of the new 26,000 square-foot facility would be "without significant impact upon natural resources," DEC forwarded the application to the New York City Department of Sanitation for consideration under the City's Environmental Quality Review law.

Before these agencies finally acted on the application, petitioner acquired the transfer station from Clean Venture in

August 1997. As a result of the change in ownership, petitioner asked to be substituted on the consent order and alerted DEC that it intended to formulate a new permit application for authorization to construct a larger facility. DEC substituted petitioner as a party to the consent order and requested information as to when the revised application would be submitted. Petitioner indicated several times during the following months that a new permit application and engineering report would soon be forwarded. Indeed, in a January 30, 1998 letter requesting extension of the consent order, then due to expire on February 7, 1998, petitioner asserted that its "new application and attendant engineering report is forthcoming." However, it is undisputed that petitioner began construction of a new 37,000 square-foot putrescible waste processing facility (hereinafter the new facility) in January 1998.

Petitioner's permit application was eventually submitted on February 6, 1998 seeking, *inter alia*, authority to continue its existing operation and permission to construct the new facility. After preliminary review, DEC issued a notice of incomplete application and requested additional information.

On February 10, 1998, DEC notified petitioner that its authority to operate the transfer station had been extended under the terms of the consent order for an additional 120 days, through May 7, 1998. DEC then inspected petitioner's site and observed that construction on the new facility was underway. Thereafter, a notice of violation based on petitioner's construction of the new facility without a permit was issued, followed by a second notice of violation in March 1998 after petitioner failed to cease construction of the new facility.

On the day the consent order was due to expire—May 7, 1998—petitioner requested a further extension. DEC refused the request based on petitioner's failure to obtain the required permits prior to commencing construction and its continuance of construction activities despite the issuance of the notices of violation.

An administrative enforcement action was commenced by DEC to prohibit petitioner from continuing construction of the new facility. That same day, petitioner initiated this proceeding seeking injunctive relief enjoining DEC from interfering with its right to operate the existing transfer station, to construct the new facility and for a declaration of its right to

do so under the consent order.[1] Petitioner obtained a temporary restraining order which allowed construction to proceed, but the order was vacated on May 29, 1998 after a hearing. In its counterclaim, DEC sought an injunction prohibiting petitioner from operating the existing transfer station and continuing construction on the new facility, and demanded that civil penalties be assessed based on statutory and regulatory violations. DEC's administrative proceeding was stayed pending resolution of this litigation.

In a well-reasoned decision and order, Supreme Court dismissed the petition/complaint, declaring that petitioner was bound by the terms of the consent order and was not entitled to a declaration that it had continuing authority to operate the transfer station, and granted DEC's counterclaim for injunctive relief. Furthermore, Supreme Court granted DEC summary judgment on its remaining counterclaims, finding that petitioner violated the permit statutes and regulations, but declined to impose civil penalties. This appeal by petitioner ensued.

Supreme Court properly rejected petitioner's claim that the consent order was in the nature of a license or permit which granted a vested right to operate the transfer station beyond the "temporary authorization" subject to renewal every 120 days. Preliminarily, we note that contrary to petitioner's contention, the consent order is more than merely an agreement between the parties; it is an administrative determination entitled to substantial deference (*see, e.g., Matter of Catskill Ctr. for Conservation & Dev. v New York State Dept. of Envtl. Conservation*, 235 AD2d 4, 7-8, *lv denied* 91 NY2d 805). That being said, like any written instrument affecting the rights and obligations of a party, a consent order must be given effect according to its plain and unambiguous terms (*see, e.g., Flacke v Salem Hills Sewage Disposal Corp.*, 91 AD2d 739). Here, the consent order clearly stated that it was not a permit[2] and it granted only temporary approval to operate, which would expire at the conclusion of 120 days unless extended by DEC in writing. The repeated extensions over an eight-year period, resulting in part from the multiple transfers of owner-

---

1. Although petitioner characterized its claim as one for declaratory and injunctive relief, Supreme Court properly addressed it as a combined declaratory judgment/CPLR article 78 proceeding because petitioner implicitly challenged DEC's determination denying its request to extend the consent order.

2. In addition, DEC regulations explicitly clarify that an enforcement order is not a permit (*see*, 6 NYCRR 622.2 [n]).

ship which were accompanied by new permit applications, did not transform the consent order into a broader or more enduring grant of authority.

The consent order, which by its unambiguous terms expired at the end of 120 days unless extended, did not provide for hearings regarding extensions. Even if the consent order could be characterized as a license[3] or permit as petitioner argues, petitioner would not have been entitled to commence or continue construction of the new facility, or to operate the existing transfer station, pending a hearing to determine the appropriateness of DEC's denial. An applicant for a license or permit renewal has no inherent property interest in renewal and therefore has no due process right to demand a hearing (*see, Matter of Daxor Corp. v State of New York Dept. of Health*, 90 NY2d 89, 97-98; *Matter of Richard I, Inc. v Ambach*, 90 AD2d 127, *affd* 61 NY2d 784, *cert denied* 469 US 822; *Matter of Lock v New York State Educ. Dept.*, 102 AD2d 979, 980, *lv denied* 64 NY2d 604). Furthermore, petitioner would have had no statutory right to continue its activities pending a hearing because its request for an extension was untimely (*see*, 6 NYCRR 360-1.8 [a] [2]; 621.13 [a] [renewal application for "all other permit types" due no less than 30 days prior to expiration]) and its permit application was incomplete at the time the consent order expired (*see*, State Administrative Procedure Act § 401 [2]; 6 NYCRR 360-1.8 [f] [2]; 621.13 [i]; *Matter of Stephentown Concerned Citizens v Herrick*, 223 AD2d 862, 865).

Similarly, petitioner's posture that the consent order embraced the construction of the new facility without prior compliance with the SEQRA process and issuance of a DEC permit authorizing the construction was properly rejected. Although the operator of the transfer station was required to erect a 10-foot fence to segregate putrescible waste from other waste, the consent order does not reference the construction of a new facility, nor can construction of that nature reasonably be deemed to fall within the general list of activities approved in the consent order. While the parties to the consent order may well have contemplated that such a facility would ultimately need to be constructed to bring the transfer station in full compliance with the statutory and regulatory scheme, nothing in the consent order could have led petitioner to conclude that a project of this magnitude could be undertaken pursuant to its temporary operating authority.

---

3. Under the definitions in State Administrative Procedure Act § 102 (4) and the DEC regulations (*see*, 6 NYCRR 617.2 [aa]; 621.1 [o]; 624.2 [x]), the terms "license" and "permit" are interchangeable.

It is also evident from the subsequent actions of the parties that the construction of any facility was intended to be addressed during the formal permitting process after SEQRA review. Indeed, both Clean Venture and petitioner applied for permission to construct a facility, with petitioner's proposal somewhat larger than that of Clean Venture, and took steps to commence the SEQRA process. As to the latter, we note that because construction of the new facility is not referenced in the consent order, the project was not exempt from SEQRA review (*see*, 6 NYCRR 617.5 [c] [29]; *Matter of Price v County of Westchester*, 225 AD2d 217, 222-223). Based on the plain language of the consent order and the uncontroverted fact that petitioner began construction without first completing the environmental impact review process and obtaining a permit as required (*see*, ECL 8-0105 [4]; 6 NYCRR 360-1.8 [b]; 360-1.7 [a] [1]), DEC was properly granted summary judgment on its claim that petitioner violated applicable statutes and regulations. Despite the considerable aggregate length of time the various permit applications were pending before governmental agencies, in light of these violations DEC's decision not to extend the consent order was neither arbitrary nor capricious (*see*, *Matter of Catskill Ctr. for Conservation & Dev. v New York State Dept. of Envtl. Conservation*, 235 AD2d 4, *supra*).

We have considered petitioner's remaining claims and find them to be without merit.

CARDONA, P. J., MERCURE, CARPINELLO and MUGGLIN, JJ., concur.

Ordered that the judgment is affirmed, without costs.