■ In the Matter of HARFORD TAXPAYERS FOR HONEST GOVERNMENT, Appellant, v TOWN BOARD OF THE TOWN OF HARFORD et al., Respondents. [675 NYS2d 683] —Crew III, J. Appeal from a judgment of the Supreme Court (O'Brien, III, J.), entered October 3, 1997 in Cortland County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Town Board of the Town of Harford allocating certain payments in lieu of taxes.

On May 5, 1997 petitioner, an unincorporated association comprised of approximately 30 members, all of whom, it is alleged, are residents, real property owners in and taxpayers of the Town of Harford, Cortland County, commenced this proceeding pursuant to CPLR article 78 against respondent Town Board of the Town of Harford seeking to set aside a determination regarding a "payment in lieu of taxes" (hereinafter PILOT) agreement entered into between the Town Board and respondent Creamery Hills L. L. P., the latter of which was permitted to intervene in this proceeding. The PILOT agreement was adopted in conjunction with the development and construction of a 24-unit "affordable housing" apartment complex for senior citizens located in the Town.

Initially, as the property upon which the then-proposed complex was to be constructed was to be leased from the State, a question arose as to whether the project itself would be entitled to tax exempt status. A PILOT agreement apparently was a necessary component of the financing for the project and, as such, the developers, Dana Hoffmann and Christopher Calabro, although believing the project to be tax exempt, nonetheless offered to pay the Town $1,500 per year for 15 years in

lieu of taxes. To that end, at a special meeting held on April 15, 1996, the Town Board adopted Resolution No. 24, which provided as follows: "BE IT RESOLVED that the Town of Harford accept $1500.00 annual payment for a period of 15 years from Chris Calabro and Dana Hoffman [*sic*] in lieu of taxes for the Creamery Hills Housing Project to be built on land leased from the State of New York on Creamery Road in the Town of Harford." It appears that the Town Supervisor, thereafter forwarded a signed copy of the aforementioned resolution to the developers, whereupon the necessary financing was obtained and construction commenced.

Notwithstanding the Town Board's adoption of this resolution in April 1996, the PILOT issue was revisited in January 1997, apparently with an eye toward extracting a more substantial payment from the developers. One day prior to the special meeting convened by the Town Board on January 18, 1997, by which time the project was substantially completed, counsel for the developers advised the Town Supervisor and the Town Attorney that his clients would pursue legal action against the Town if the PILOT resolution was rescinded and the Town Board failed to honor its commitment in this regard. To that end, when the Town Board convened the next day, it adopted a resolution stating that it was entering into executive session to discuss the potential litigation surrounding the PILOT agreement. Ultimately, the April 1996 resolution remained unaffected and the Town Supervisor executed a PILOT agreement that included, *inter alia*, a provision granting the Town a 20% share in the profits from the rental units. There does not appear to be any dispute that the project subsequently was completed and the rental units leased and occupied in accordance with the stated purpose of the development.

By decision dated August 11, 1997, Supreme Court dismissed petitioner's application seeking to annul the underlying PILOT agreement, finding that the instant CPLR article 78 proceeding was barred by the applicable Statute of Limitations and the doctrine of laches. This appeal by petitioner ensued.

We affirm. CPLR 217 (1) provides, in relevant part, that "a proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner". Thus, determining whether the instant proceeding is time barred involves a two-step process—namely, ascertaining what administrative action is being challenged and, further, when such action became final and binding (*see, Matter of New York State Rehabilitation Assn. v State of New York, Off. of Mental Retardation & Dev.*

*Disabilities*, 237 AD2d 718, 719-720; *Matter of Monteiro v Town of Colonie*, 158 AD2d 246, 249).

Here, petitioner plainly seeks to invalidate the underlying PILOT agreement and, more fundamentally, the Town's decision to enter into such agreement which, petitioner alleges, "has an adverse impact upon [it] and *all* Taxpayers within the Town * * * by forcing them to carry a grossly disproportionate share [of] the [overall tax burden]" (emphasis in original). Although petitioner contends that the Town Board's determination in this regard did not become "final and binding" until the January 18, 1997 special meeting, at which the Town Supervisor announced that he would execute the agreement on behalf of the Town, we cannot agree. Calabro, Hoffmann, the Town Supervisor and the Town Attorney each averred, without contradiction, that it was made clear at the April 15, 1996 meeting of the Town Board that the proposed project could not go forward without a commitment from the Town to grant the developers a tax abatement. To that end, Resolution No. 24 was adopted at that meeting, which clearly evidenced the Town Board's agreement to accept a PILOT for the property in question. As noted previously, the Town Board declined to rescind this resolution at the January 18, 1997 meeting despite being provided the opportunity to do so.

Thus, in our view, Supreme Court quite appropriately concluded that the underlying determination became "final and binding" upon petitioner as of April 15, 1996 and, hence, this proceeding, commenced in May 1997, was time barred. To the extent that the record reflects that such decision and agreement continued to be a topic of discussion during the months prior to and at the January 18, 1997 meeting, we view such discussions as nothing more than a request for the Town Board to reconsider its position. In this regard, it is well settled that " '[n]either an application for reconsideration * * * nor a series of inquiries regarding reconsideration * * * will extend or toll the four-month Statute of Limitations' " (*Matter of Walsh v Superintendent of Highways of Town of Poestenkill*, 135 AD2d 968, 969, *lv denied* 72 NY2d 808, quoting *Matter of Filut v New York State Educ. Dept.*, 91 AD2d 722, 723, *lv denied* 58 NY2d 609 [citations omitted]; *see, Matter of New York State Rehabilitation Assn. v State of New York, Off. of Mental Retardation & Dev. Disabilities, supra*, at 721).

Similarly unpersuasive is petitioner's assertion that this proceeding is not barred by the doctrine of laches. In this regard, petitioner argues that the Town Board has failed to perform its governmental function of safeguarding the Town's

tax base, forcing it, as a group of concerned citizens, to step in and assume that role. As petitioner has, in essence, undertaken a governmental function, the argument continues, the doctrine of laches is inapplicable (*see generally*, *Matter of Fowler v City of Saratoga Springs*, 215 AD2d 819, 820). This argument, though novel, is completely lacking in merit.

The record reflects that in the months following the passage of Resolution No. 24 in April 1996, consistent progress on the project was made by the developers. Specifically, the minutes of various Town Board meetings document a public hearing on a needed zoning change (May 1996), the presentation of the operating budget (June 1996), the designation of the Town Board as lead agency, the issuance of a negative declaration and the approval of the site plan (July 1996), ground breaking for the project (August 1996) and a progress report reflecting a target completion date of January 1997, with leasing to commence in March 1997 (November 1996). Faced with such public progress on the project, petitioner nonetheless elected to wait until May 1997, at which point construction was completed, the closing had taken place and the complex was occupied, to commence the instant proceeding. Having failed to undertake any efforts to safeguard its rights in the interim, petitioner cannot now be heard to complain (*cf.*, *Matter of Stockdale v Hughes*, 189 AD2d 1065, 1067-1068).* Petitioner's remaining contentions have been examined and found to be lacking in merit.

Cardona, P. J., Spain and Graffeo, JJ., concur. Ordered that the judgment is affirmed, without costs.

---

* While it is true that petitioner challenges the decision to accept the PILOT and not the underlying construction of the complex in question, it is clear from the record that the project never would have gone forward without the Town's commitment to grant a tax abatement. As the PILOT agreement was an integral part of the financing for the project, petitioner was obligated to act long before construction commenced and, having failed to do so, is guilty of laches.